### TEXAS OSAGE CO-OPERATIVE ROYALTY POOL et al. v. GARCIA.

### No. 11369.

Court of Civil Appeals of Texas.
San Antonio.
Nov. 24, 1943.

House, Mercer, Edwards & Irvin, of San Antonio, for appellants.

Bismark Pope, of Laredo, and John A. Pope, Jr., of Rio Grande City, for appellee.

NORVELL, Justice.

This is a suit for reformation of a deed. On December 5, 1930, M. M. Garcia and wife conveyed to the trustees of Texas Osage Co-operative Royalty Pool (an express trust) and Flag Oil Company of Texas, an undivided one-half interest in and to all the oil, gas, sulphur and other minerals of whatsoever kind and nature under certain lands located in Starr County, Texas, and described in the deed as follows: "1280 acres of land, known as Sur. # 918, Cert. # 1921, Abst. # 656. George W. Lowe being the original grantee. This being the same land purchased by grantor from Josefa P. de Marks, June 24th, 1909, and Manuel Guerra July 20th, 1909. First above mentioned deed recorded in Vol. 31, Pages 98–99. Second above mentioned deed recorded in Vol. 30, Pages 361 & 362. Deed Records of Starr County."

The description above set out was written in longhand into a printed form of a deed. Immediately following this longhand description and in the printed part of the deed the following appears: "it being mutually understood and agreed that this conveyance is to cover all lands now owned by the grantors in the above stipulated surveys, whether herein properly described or not; and containing 1280 (figures inserted in blank space) acres, more or less. * * *"

We might say here that the description above set out covers all of Survey No. 918. Appellants have cited numerous cases dealing with the construction of deeds, but as we understand it appellee does not deny that the description as written would operate to convey an undivided one-half of the minerals under the entire survey. The position of the appellee, M. M. Garcia, is that the sale of minerals evidenced and effected by the deed he now seeks to reform was made on an acreage basis. He sued appellants Texas Osage Co-operative Royalty Pool, Inc. (the corporate successor to the express trust) and Flag Oil Company of Texas, alleging that at the time of the execution of the mineral deed, all parties were mutually mistaken as to the acreage contained in Survey No. 918, in that they believed that it contained 1,280 acres, whereas, in truth and in fact, the survey contained 1,378.11 acres. This excess was discovered in 1939 or 1940, when a resurvey showed an excess of 98.11 acres. For this excess Garcia secured a deed of acquittance from the State of Texas on October 22, 1940. See Article 5421c—1, Vernon's Ann.Civ.Stats.

The trial was to the court without a jury and upon request findings of fact and conclusions of law were filed.

The trial court in its decree reformed the mineral deed so that the mineral interest acquired by appellants was limited to 1,280 acres out of the survey, and under appropriate pleading directed a partition of the mineral interests under the lands of the survey. This would cause to be set aside to Garcia the mineral interests under 98.11 acres free and clear of all claims of appellants.

In Olvey v. Jones, 137 Tex. 639, 156 S. W.2d 977, the Supreme Court allowed relief by way of reformation under a fact situation similar to that disclosed by the pleadings in this case. We regard that case as largely controlling here. Appellants present twelve points in their brief, but, as we view it, only two contentions presented by said points need be discussed. Certain points urged would be applicable to a suit for rescission but have no application to a suit for reformation.

The first contention presented is that the evidence fails to support the trial court's finding that the sale of minerals evidenced by the deed sought to be reformed was made on a per acre basis.

The opinion of the Supreme Court in Olvey v. Jones sets out the jury's findings in that case. The trial court here found, inter alia,

"That the mineral deed dated December 5, 1930, which now appears of record in Book 66, pages 585 and 586, of the deed records of Starr County, Texas, was through mutual mistake of all of the parties so prepared so as to purport to convey a full one-half interest in all minerals under such survey, whether more or less than 1280 acres.

"That the offer and acceptance was for the conveyance of an undivided one-half interest in minerals under 1280 acres of land, on a per acreage basis by the payment therefor in headrights of one for each one-half interest in the minerals under each 640 acres of land, or a total of two headrights.

"That it was the intention of the parties to the transaction, at the time, to convey exactly 640 mineral acres, or an undivided one-half interest in 1280 acres of land for two full headrights."

The trust agreement of Texas Osage Co-operative Royalty Pool (the express trust) was introduced in evidence. The eleventh paragraph thereof reads as follows: "Eleventh. The trustees hereunder shall issue participation certificates for one full share or headright in this trust in exchange for a full one-half interest in and to the oil, gas and other mineral interests in and under Six Hundred Forty (640) acres of land, or the equivalent of such one-half interest in a greater or less number of acres, either subject to or not subject to an oil, gas and mineral lease conveying not more than a full seven-eighths working or development interest in the lands affected thereby. No full share or headright of the Two Thousand Two Hundred Twenty-nine (2,229) shares or headrights shall be issued for a less consideration than that above stated. Fractional shares or headrights may be issued by the trustees hereunder for corresponding fractions of the above mentioned interest. The trustees hereunder shall not issue to a single owner of lands lying wholly within one County participating shares or headrights in this trust in a total number exceeding ten shares in property for royalty interests in said lands. The oil, gas and mineral interests accepted in exchange for the shares or headrights shall affect lands as

widely spread and diversified as to geological formation and geographical location as practicable, but the trustees hereunder shall be the sole judges as to the lands in which oil, gas and mineral interests will be accepted by the trust."

In accordance with the eleventh paragraph of the trust agreement, M. M. Garcia and wife, on December 5, 1930, tendered to the trust estate the mineral deed here involved, together with an application for the issuance of two headrights or shares in Texas Osage Co-operative Royalty Pool. This application reads in part as follows:

"The undersigned hereby applies for TWO headrights or shares in the Texas Osage Co-Operative Royalty Pool, and by the accompanying royalty deed convey to the Trustees of said Pool, and the Flag Oil Company of Texas, subject to approval of this application, a full undivided one-half interest in and to the oil, gas and other mineral rights in 1280 acres of land in Starr County, Texas, comprising 640 full acres of royalty or mineral rights, as described in said royalty deed. * * *

"It is understood that the Texas Osage Co-operative Royalty Pool is a trust estate, the trustees of which are authorized to issue 2,229 headrights or shares, each representing an equal right of participation, and this application is made with the understanding that an undivided 25% interest in the total property accepted by the trust estate is conveyed in order to finance the Royalty Pool, and that no shares or headrights are to be issued for promotion, compensation or other similar purposes. That shares or headrights are to be issued only in exchange for oil, gas and other mineral interests on the basis of one share or headright for a one-half undivided interest in the minerals in 640 acres of land, either subject to or not subject to an oil, gas and mineral lease, or for the equivalent of such interest in a different number of acres."

This application as well as the deed was accepted by the trust estate.

We think it clearly established by the evidence that all parties to the deed and the transaction which gave rise to the conveyance, believed that Survey No. 912 contained 1,280 acres, the amount called for in the patent therefor.

We also hold that the evidence hereinabove referred to supports the trial court's finding to the effect that the mineral interests were sold by appellee and purchased by the trust estate on an acreage basis.

Appellants' second contention is that relief by way of reformation was barred by laches and the four-year statute of limitations. Article 5529, Vernon's Ann.Civ.Stats.

It seems undisputed that the excess in the survey was not discovered until 1939 or 1940. Appellee filed his suit on February 10, 1942. The rule is that limitation begins to run against the right of reformation from the time of the discovery of the mistake upon which the right is predicated, or from the time the mistake should have been discovered by the exercise of reasonable diligence, 36 Tex.Jur. 765, § 26; Annotation, 106 A.L.R. 1338.

The trial court found as a fact that appellee's suit had been brought "in due time" and also within "a reasonable time after his (appellee's) discovery of the excess." The trial court concluded as a matter of law that appellee's suit for reformation "was not barred by limitation at the time it was commenced."

We would be unauthorized to disturb the trial court's findings, unless it can be said that there is no evidence, or insufficient evidence, to support them. Clearly, the suit was filed within four years after actual discovery. And we do not believe it can be said that appellee was negligent as a matter of law in failing to have a survey made prior to 1939 or 1940. The land here involved was acreage property. Garcia held under a deed referring to the patent issued by the State of Texas, which described by metes and bounds a tract purportedly containing 1,280 acres. Apparently the occasion for the re-survey which actually disclosed the excess acreage was the passage of Home Bill No. 9, by the 46th Legislature in 1939, Section 4 of which is codified as Article 5421c—1 by the publishers of Vernon's Ann.Civ.Stats. We sustain the trial court's holding that appellee's suit was not barred by either laches or the statute of limitations. Ramsey v. McKamey, 137 Tex. 91, 152 S.W.2d 322; Burress v. Byrd, Tex.Civ.App., 69 S.W.2d 529.

All of appellants' points have been considered. In our opinion none of them discloses a reversible error.

The decree of the trial court is affirmed.