**Carl MILES, Appellant,**

v.

**J. O. MARTIN, Appellee.**

**No. 3351.**

Court of Civil Appeals of Texas.

Eastland.

February 7, 1958.

Rehearing Denied February 28, 1958.

**636**

Whitten, Harrell & Wilcox, Abilene, for appellant.

King & Willoughby, Yates & Yates, Abilene, for appellee.

GRISSOM, Chief Justice.

J. O. Martin obtained a judgment against Carl Miles and others for one-fourth of the minerals in two tracts of land, subject to the power to execute leases and to existing leases. Miles has appealed.

The court concluded, among other things, that a deed from Martin to the Pratts transferred title to the land, subject to two mineral reservations, one-fourth by Wall and one-fourth by Martin; that the Pratts' deed of trust, which was of record when Miles bought from the Pratts, showed there was a mineral reservation by Wall and an additional reservation of one-fourth of the minerals by Martin in Martin's deed to the Pratts; that same constituted a contractual stipulation of record as to the amount of minerals retained by Martin; that it was a conclusive admission of record against interest by the Pratts and a recognition of Martin's one-fourth mineral reservation in addition to a prior mineral reservation by Wall; that the stipulation in the Pratts' deed of trust recognizing both reservations, by virtue of which deed of trust the Pratts obtained the money to pay Martin, created an estoppel of record against the Pratts to assert an esstoppel against Martin on account of his warranty and constituted a waiver; that the recognition of a reservation by Martin of a one-fourth mineral interest, in addition to that reserved by Wall, was shown in Pratts' deed of trust and became a part of Pratts' deed to Miles by reason of the reference therein to said deed of trust and, further, that Pratts' deed to Miles was only a quitclaim of the minerals and royalties and Miles acquired only the interest then actually owned by the Pratts.

Miles first two points assert that the court erred in (1) awarding Martin one-fourth of the minerals and royalties and in (2) concluding that Martin reserved one-fourth of the minerals in addition to the one-fourth reserved by Wall.

It was agreed that Wall was the common source of title; that in November, 1950, Wall and wife owned the land in fee simple and on November 8, 1950, executed a lease with Martin and wife to Viking Oil Corporation; that this lease was assigned to Woodley Petroleum Company and oil is now being produced thereon and sold to Onyx Refining Company, who is withholding payment of the one-fourth of the royalty in dispute; that on December 22, 1950,

Wall and wife were the owners of the land, subject only to said lease, and on said date the Walls executed and delivered a warranty deed to Martin.

Said deed contained the following exception:

" 'There is, however, excepted from this conveyance and reserved to the grantors herein, their heirs and assigns, the following:

" 'First: An undivided one-fourth of the royalty that may be provided for in any oil, gas or mineral lease or contract which may hereafter be executed by the grantee herein, his heirs and assigns, for the exploration and development of said land or any part thereof, for oil, gas or other minerals. It being specifically understood and agreed, however, that the said grantee, his heirs and assigns, shall not make or enter into any lease or contract for the exploration and development of said land or any part thereof, for oil, gas and other minerals, unless each and every such lease or contract shall provide for a royalty of at least one-eighth of all the oil, gas or other minerals produced therefrom;

" 'And, in the event grantee, his heirs or assigns, as in the status of fee owners of said land and minerals, shall explore, develop and operate the said land or any part thereof for oil, gas or other minerals, grantors herein, their heirs or assigns, shall own and be entitled to receive as a free royalty not less than one-thirty-second of the total production of oil, gas and other minerals produced therefrom.

" 'Second: An undivided one-fourth of all of the bonuses or other down payments received by grantee, his heirs and assigns, from any lease or other contract for the exploration or development of said land, or any part thereof, for oil, gas and other minerals.

" 'Third: An undivided one-fourth of all delay rentals which shall become due and payable under any lease or contract executed by grantee, his heirs or assigns, for the exploration or development of said land, or any part thereof, for oil, gas and other minerals.

" 'The grantors' ¼ of the bonuses and rentals or other down payments that may be paid under any such lease or contract, as above provided for shall be paid to grantors, their heirs and assigns, by depositing the same to the credit of said grantors, their heirs and assigns, in the Farmers & Merchants National Bank of Abilene, Texas, or its successors.

" 'In this connection, it is agreed that the grantors, their heirs and assigns, need not be named as lessors in any such lease or contract, nor shall it be necessary for such grantors, their heirs and assigns, to join in the execution of any such lease or contract, executed by the grantee herein, his heirs and assigns, for the exploration and development of said land or any part thereof for oil, gas and other minerals, but any bonuses or rentals which may become due and payable under the terms of any such lease or contract shall be deposited in the depository above named, to the credit of grantors, their heirs and assigns, in accordance with the terms hereof, until written notice in recordable form, of a change in the depository shall be given to the grantee, his heirs or assigns, and recorded in the office of the County Clerk of Taylor County, Texas.' "

All parties agree that Wall intended to except one-fourth of the minerals and royalty and that said amount of royalty has been properly paid to him. We shall. therefore, regardless of what may be the proper interpretation of Wall's exception, treat Wall's deed as excepting one-fourth

of the minerals and royalties payable under all leases now producing, whether they were then in existence or thereafter executed.

On January 12, 1951, Martin executed a deed to J. M. and Carl P. Pratt conveying the same land. This deed contained an exception in exactly the same language as that in Wall's deed to Martin. On January 8, 1955, the Pratts conveyed the surface of the same land to Carl Miles and O. B. Haley. This deed recited the assumption by the grantees and their promise to pay $4,322.50 to Kansas City Life Insurance Company, which debt was secured by the Pratts' deed of trust. The deed to Miles and Haley contained the following provisions:

" 'It is the intention of the grantors herein to convey and they do hereby convey all the *land* enclosed by the two sets of field notes set out above regardless of whether such land is situated within the two surveys named, or elsewhere.

" 'It is agreed and understood, however, that *this conveyance is made subject to any outstanding mineral or royalty interest* now owned of record by persons who are not parties to this conveyance, but *grantors* herein have and *do hereby convey all mineral and royalty interest now owned by them* in said land including specifically but not by way of limitation, all leasing rights or leasing privileges owned by them. (Emphasis ours.)

" 'It is also agreed that this conveyance is made subject to all outstanding valid and subsisting oil and gas leases now of record in Taylor County, Texas, covering the land herein conveyed or any part thereof.' "

Haley conveyed his interest to Miles. We shall, therefore, hereafter discuss the case as if the Pratts had conveyed to Miles alone. On April 30, 1956, Miles conveyed to J. Q. Carter the surface, all leasing rights and one-half of the bonuses, delay

rentals and royalties provided for in "existing or future" leases. It was agreed that Carter now owns such interest. It was agreed that on July 18, 1956, Carter executed an oil and gas lease on 45.23 acres of the land described in plaintiff's petition and that there is now production therefrom and the oil is being purchased by Onyx. It was agreed that the lease by the Walls and the Martins to Viking on November 8, 1950, as thereafter amended, is a valid lease on the land covered thereby; that the lease of July, 1956, by Carter is a valid lease on the land covered by it; that under the terms of said leases, which are now in force, Oynx, as the purchaser of oil produced therefrom, has "rightfully paid out three-fourths (¾) of the royalty therein provided for to J. Q. Carter and L. A. Wall" and that Onyx is holding in suspense one-fourth of the royalty produced from said 'leases. This one-fourth is claimed by both Martin and Miles.

In answer to Miles' first two points Martin says the Pratts' deed of trust and Martins' deed to the Pratts were part of the same transaction and that the Pratts and Miles, who claims under the Pratts, are conclusively bound by the recital in that deed of trust that there were two outstanding mineral reservations when Miles bought, one by Wall and another by Martin, and that the recital therein of a mineral reservation by Wall and an additional reservation by Martin conclusively bound the Pratts of record as a waiver and as an estoppel to claim an estoppel against Martin because of his warranty. Pratts' deed of trust to Kansas City Life Insurance Company conveyed the land to a trustee to secure payment of the Pratts' note. Pratts' deed of trust, which was of record when Miles bought from the Pratts, contains the following provision:

"Subject to mineral interest reserved in deed from L. A. Wall and wife to J. O. Martin dated December 22, 1950, recorded in Volume 417, Page 600, Deed of Records of said County, and

to mineral interest reserved in deed from J. O. Martin and wife to Jabe M. Pratt and Carl P. Pratt dated January 12, 1951."

We understand the holding of the trial court and the contention of appellee Martin to be that when Miles purchased the land from the Pratts that, by reason of the recital in Pratts' deed of trust that same was subject to a mineral interest reserved in the deed from Wall to Martin and to an additional mineral interest reserved in the deed from Martin to the Pratts, the record showed conclusively that Miles had notice of Martin's one-fourth mineral and royalty interest or, at least, that said recital put Miles on inquiry, which, if pursued, would have disclosed that Martin had retained an additional one-fourth interest in the minerals and royalty.

The contract between Martin and the Pratts for the sale of the land and the Pratts' application for a loan expressly state that Martin reserved one-fourth of the minerals in addition to a one-fourth reserved by Wall. Those instruments were not of record. If Miles was an innocent purchaser they were not admissible. If Miles was not an innocent purchaser, he stands in his grantors' shoes and Martin had the right to prove what interest the Pratts actually owned.

■ Under our view of the proper disposition of this appeal it is unnecessary to discuss some of the contentions mentioned or appellant's other points. From the quoted provisions of the Pratts' deed to Miles it is evident that it purports to convey only whatever interest in the minerals and royalties the Pratts then owned. The deed says the grantors intend to convey all the "land" enclosed by two sets of field notes but that such conveyance is subject to any outstanding mineral and royalty interests, but that the grantors "convey all mineral and royalty interest now owned by them * * *." A "quitclaim deed purports to convey only such

right, title or interest as the grantor has at the time the deed is made * * *." A "quitclaim deed carries with it notice of every defect there may be in the grantor's title, a grantee under a quitclaim deed acquires no better interest than his grantor had, and is not entitled to protection as a bona fide purchaser." 55 Am.Jur. 1114. When a purchaser takes a quitclaim deed, the deed itself is notice to him that he is getting a doubtful title. Such a deed indicates the grantor's doubts with respect thereto and is sufficient to arouse suspicion and impose a duty on the purchaser to make inquiry. 55 Am.Jur. 1115.

"The distinguishing characteristic of a quitclaim deed is that it is a conveyance of the interest or title of the grantor in and to the property described, rather than of the property itself. In the determination of whether some particular instrument should be construed to be a quitclaim, some of the authorities have indicated that an appropriate test is: Does the deed purport to convey a definite or indefinite interest? If no interest is specified, the grantor is considered to have plainly manifested an intention to convey only such title as he may then have, and the deed is a mere quitclaim." 16 Am.Jur. 560. A note following this quotation is as follows:

"By accepting a quitclaim as a conveyance, the grantee takes the risk that the grantor has less interest than the grantee had supposed or that he had no interest at all. Taylor v. Harrison, 47 Tex. 454, 26 Am.Rep. 304. Annotation: 35 L.R.A.,N.S., 1193; Ann.Cas.1913C, 363."

■ We conclude that, so far as the minerals and royalties are concerned, the conveyance to Miles disclosed a purpose to convey only whatever interest the grantors might then own and that it is merely a quitclaim deed. Cook v. Smith, 107 Tex. 119, 174 S.W. 1094, 1095, 3 A.L.R. 940;

Woodward v. Ortiz, 150 Tex. 75, 237 S.W. 2d 286, 291–293; 14 Tex.Jur. 763, 764 and 43 Tex.Jur. 626. Our Supreme Court said in Simonds v. Stanolind Oil & Gas Co., 134 Tex. 332, 114 S.W.2d 226, 235:

"Under the test prescribed in Cook v. Smith, [107 Tex. 119, 174 S.W. 1094, 3 A.L.R. 940], supra, the instrument is clearly a quitclaim deed because, considered in its entirety, it discloses a purpose to convey no more than the title of the grantors."

The Pratts' deed to the minerals and royalties is clearly a quitclaim. It expressly states that the conveyance is subject to outstanding mineral and royalty interests and leases and then says, "but" the grantors "convey all the mineral and royalty interest now owned by them". Miles was charged with notice that he was getting a dubious title. He was put upon inquiry as to the claims which cast doubts upon it. He was not an innocent purchaser. He was charged with knowledge of all facts that a proper inquiry would have revealed. Richardson v. Levi, 67 Tex. 359, 3 S.W. 444; Threadgill v. Bickerstaff, 87 Tex. 520, 29 S.W. 757, 758 and Jemison v. Scottish-American Mortgage Co., 19 Tex.Civ.App. 232, 46 S.W. 886 (Writ Ref.).

Miles is in no better position than his grantors, the Pratts, would have been in a contest over the same thing with Martin. Winningham v. Dyo, Tex.Com.App., 48 S.W.2d 600, 603; 26 C.J.S. Deeds § 118, p. 947. When the Pratts purchased from Martin, they executed a contract in which they expressly agreed that Wall and Martin had each reserved one-fourth of the minerals and royalties and that the Pratts were to obtain only one-half. The Pratts' application for a loan stated the same thing. The Pratts conveyed to Miles only the mineral and royalty interest then owned by them. Their deed was expressly subject to all outstanding mineral and royalty interests and leases. The Pratts' deed of trust, which was of record and in Miles

chain of title, indicated, if it did not say, that both Wall and Martin had reserved mineral interests. Although Wall's deed seemed to except minerals and royalties under leases thereafter executed by his grantee, Martin, his heirs and assigns, it was agreed that the purchaser of oil from a lease executed by Wall and Martin before Wall conveyed the land to Martin had properly paid to Wall one-fourth of the royalties produced. Before production from that lease, the lessee had for four years paid one-fourth of the annual rentals to Martin and one-fourth to Wall. It would have indeed appeared questionable to one making an investigation to see exceptions by Martin and Wall of interests under future leases without mention of an interest under the then existing lease executed by them. The deed to Miles gave warning that the Pratts' were conveying only whatever interest they then owned in the minerals and royalties and that they were unwilling to assert ownership of the specific interest that Miles now claims under said deed. It is evident that inquiry from any of the many logical sources of information would have resulted in knowledge of the fact that both Wall and Martin intended to reserve one-fourth of the minerals and royalties; that the Pratts purchased only one-half; that this fact was expressly stated in the Pratts' contract with Martin and in their application for a loan. After Miles' purchase and at a time when it appeared that the first well drilled on the lease executed by Wall and Martin was about to become a producer, according to Martin, Martin talked with Miles at said well and the conversation indicated that Miles assented to Martin's claim of an interest in the oil that might be produced. Miles did not testify. Under the circumstances, Miles was in no better position to assert ownership of Martin's one-fourth interest than the Pratts would have been. The record conclusively shows that the Pratts could not have successfully disputed Martin's ownership.

The judgment is affirmed.