CARL MILES V. J. O. MARTIN.

No. A-6764. Decided February 18, 1959.

(321 S.W. 2d Series 62)

*Whitten, Harrell & Wilcox* and *S. E. Wilcox,* all of Abilene, for petitioner.

The Court of Civil Appeals erred in holding that J. O. Martin is entitled to one-fourth of the royalty under oil, gas and mineral leases which were in effect on the date of the deed from J. O. Martin and wife to Jabe M. Pratt and Carl P. Pratt, in the face of the unambiguous and express provisions of such deed that the grantors therein only reserved royalty, bonuses and delay rentals under future leases, there being no evidence or finding by the trial Court of Fraud, accident, mistake or other fact which would authorize a reformation of such deed. Said court also erred in affirming the judgment of the trial court and in refusing to render judgment that J. O. Martin take nothing by his suit, and that Carl Miles is the owner of an undivided one-fourth of the oil, gas and other minerals, together with the bonuses, rentals and royalties atributable thereto. Walker v. Hamilton, 42 S.W. 2d 148; Sunderman v. Roberts, 213 S.W. 2d 705; Sun Oil Co. v. Bennett, 125 Texas 540, 84 S.W. 2d 447; Wiseman v. Waters, 107 Texas 96, 174 S.W. 815.

*Yates & Yates* and *Edmund C. Yates,* all of Abilene, for respondents.

In rebuttal cited Collier v. Caraway, 140 S.W. 2d 910; Gailbraith v. Engleke, Texas Com., 1 S.W. 346; Stoneham v. Schultz, 138 S.W. 2d 825.

MR. JUSTICE WALKER delivered the opinion of the Court.

The principal question in this case is whether the rule laid down in Duhig v. Peavy-Moore Lumber Co., 135 Texas 503, 144 S.W. 2d 878, applies to a deed executed by respondent, J. O. Martin, in 1951. Respondent brought the suit against Carl Miles, a petitioner, and others to recover an undivided one-fourth interest in the minerals in and under approximately 417 acres of land in Taylor County which he claims was reserved to him by the terms of said deed. In the course of the trial it developed that the only real controversy is between petitioner and respondent, and the other defendants, except a stakeholder of the royalties allocable to such interest, were dismissed from the suit. The case was tried to the court without a jury, and judgment was entered awarding respondent the one-fourth mineral interest and accrued royalties, subject only to valid mineral leases covering the land and to the power of others to execute oil and gas leases thereon. This judgment was affirmed by the Court of

Civil Appeals. 310 S.W. 2d 635. We have concluded that the present record does not establish respondent's ownership of the mineral interest in question and that the cause should be remanded for a determination of his right to equitable relief.

By warranty deed dated December 22, 1950, L. A. Wall and wife, who are the common source of title, conveyed the land to respondent. There was "excepted from this conveyance and reserved to the grantors, herein, their heirs and assigns," one-fourth of the royalty that might be provided in, and one-fourth of all bonuses and delay rentals received from or payable under, any oil, gas or mineral lease or contract thereafter executed by the grantee, his heirs or assigns, for the exploration and development of the land or any part thereof. It further stipulated that the grantors, their heirs or assigns, need not be named as lessors or join in the execution of any such lease or contract. There are other provisions which are not mentioned here because the entire exception is quoted in the opinion of the Court of Civil Appeals.

■ The conveyance which gives rise to the present suit is a general warranty deed dated January 12, 1951, whereby respondent conveyed the land to Jabe M. Pratt and Carl P. Pratt. This instrument also reserves one-fourth of the royalty, bonus money and delay rentals, and authorizes the grantees, their heirs and assigns, to execute mineral leases and contracts for the development of the property. The reservation is identical in all respects with that set out in the Wall deed.

By deed dated January 8, 1955, the Pratts conveyed the land to petitioner and O. B. Haley. The terms and provisions of this instrument will be noticed later. O. B. Haley's interest was subsequently acquired by petitioner, who then conveyed a tract of 5.08 acres to R. L. Holloway. Petitioner thereafter conveyed the surface of the remainder of the land, together with all leasing rights and one-half of the bonuses, delay rentals and royalties, to J. Q. Carter.

It was held in the Duhig case that the grantor in a general warranty deed is estopped to claim title to an interest reserved therein when to permit him to do so would, in effect, breach his warranty with respect to the title and interest which the deed purports to convey. The parties recognize that the Walls own an undivided one-fourth interest in the minerals by virtue of the reservation in their deed to respondent, subject to the leasing rights granted thereby. Although this interest was out-

standing, it is not mentioned in the conveyance executed by respondent to the Pratts. The latter instrument purports to convey all the surface, three-fourths of the bonus money, delay rentals and royalties, and all leasing privileges. It also contains a covenant of general warranty, and there is no contractual provision limiting the title, rights and powers which the grantees were to acquire thereunder. The form of the conveyance thus brings the case squarely under the Duhig holding, and we shall consider the facts and circumstances found by the trial court which respondent says render such rule inapplicable.

The deed from respondent to the Pratts reserves an express vendor's lien to secure the payment of a note for $6,650.00 of even date with the deed, executed by the grantees and payable to respondent's order on or before thirty days after date. Respondent transferred this note and the lien securing same to Kansas City Life Insurance Company by assignment dated January 31, 1951. The Pratts executed a deed of trust on the land dated January 22, 1951, to secure the payment of a note for $6,650.00 given by them to Kansas City Life in renewal and extension of the vendor's lien note. It is recited therein that the deed of trust is "subject to mineral interest reserved in deed from L. A. Wall and wife to J. O. Martin dated December 22, 1950, recorded in Volume 417, page 600, Deed Records of said County, and to mineral interest reserved in deed from J. O. Martin and wife to Jabe M. Pratt and Carl P. Pratt dated January 12, 1951."

The evidence shows and the trial court found that the executed deed, vendor's lien note, assignment, deed of trust, and deed of trust note were placed by the parties in the hands of P. P. Bond, who had obtained the loan for the Pratts from Kansas City Life. All of the instruments were held by Bond in escrow pending receipt of a check for the proceeds of the loan. When the check was received, Bond delivered same to respondent, filed the three recordable instruments for record at the same time, and forwarded the two notes to the loan company. This was done in accordance with the previous agreement and understanding of the parties.

Respondent argues that under these circumstances the several instruments held in escrow by Bond are to be construed together as parts of the same transaction. He says that the deed of trust plainly recognizes the existence and validity of two mineral reservations, and that this must be read into and becomes part of the deed and thus takes the case out of the Duhig rule. We do not agree.

■ It is well settled that separate instruments executed at the same time, between the same parties, and relating to the same subject matter may be considered together and construed as one contract. Howards v. Davis, 6 Texas 174; 26 C.J.S. Deeds 840, Sec. 91; 16 Am. Jur. Deeds 537, Sec. 175. This undoubtedly is sound in principle when the several instruments are truly parts of the same transaction and together form one entire agreement. It is, however, simply a device for ascertaining and giving effect to the intention of the parties and cannot be applied arbitrarily and without regard to the realities of the situation.

Decisions will be found in which instruments have been construed together or treated as one contract even though they were not between the same parties. See Guadalupe-Blanco River Authority v. City of San Antonio, 145 Texas 611, 200 S.W. 2d 989; Veal v. Thomason, 138 Texas 341, 159 S.W. 472. In the Guadalupe-Blanco case, the city and the river authority made an agreement in settlement of pending litigation under the terms of which the city was permitted to acquire the assets of a certain utility company on condition that it would lease a part of the property to the authority. The conveyance to the city was accordingly treated as being subject to the lease for the purpose of determining the validity of the latter. It was also held that the lease and a trust indenture executed by the city to secure its bonds should be construed together as one instrument, but the evidence showed not only that the instruments were executed in consummation of one over-all transaction but also that all parties were present while they were being prepared. The Veal case involved separate identical oil and gas leases covering a group of contiguous tracts of land ownd by the various lessors in severalty. Each instrument contained recitals showing that the execution of similar leases by other lessors was contemplated by the parties, and the several leases were held to constitute but one contract just as though all of the lessors had signed the same paper.

■ There was a reasonable basis for construing the instruments together or treating them as one contract in these cases, but that is not true of the deed and deed of trust now under consideration. The conveyance and mortgage were executed as parts of the same transaction in the sense that both were necessary to effectuate the sale, but not in the sense that they together form one entire agreement. A vendor who sells his land for cash and retains a vendor's lien for the convenience of the purchaser and to enable the latter to obtain a loan with which to pay part of the purchase price is not concerned with the terms of a security

instrument executed by the purchaser in favor of the lender. In such a transaction the deed of trust is usually prepared by or under the direction of the lender and the seller has no interest in and does not attempt to acquaint himself with its provisions. There is nothing in the present record to suggest that respondent participated in the preparation of the deed of trust or knew any of its terms. Under these circumstances respondent could not be bound by recitals therein tending to enlarge his obligations under the deed or indicating that additional property or a greater estate was conveyed thereby. It would hardly be appropriate then to lay down a rule that the deed of trust might be read into the deed for the purpose of showing that the grantee acquired less property than the latter instrument purports to convey. Extrinsic declarations by one party to an unambiguous conveyance which are not binding upon the other party thereto cannot be used to create an ambiguity in the deed or alter the rights of the parties thereunder. We hold that the deed and deed of trust are not to be construed together for the purpose of ascertaining the intention of the parties to the conveyance.

■ Respondent also contends and the trial court concluded that the provisions of the deed of trust quoted above constitute a contractual stipulation as to the amount of mineral interest conveyed by respondent's deed and a conclusive admission against interest in recognition of respondent's reservation as distinct from the Wall reservation, create an estoppel of record against the Pratts to claim an estoppel against respondent, and also constitute a waiver of the right to invoke an estoppel against respondent. While the deed of trust recognizes the existence of two reservations, one in the Wall deed and the other in the conveyance executed by respondent, this amounts at most to a confirmation of the reservations as written. No particular mineral interest is excepted from the security instrument, and the recital in question merely requires that the rights of the trustee, his successors and assigns, yield and be subordinate to whatever interests were reserved by the terms of the respective deeds. It does not attempt to define the property or interests conveyed by either deed or the nature, extent or legal consequences of either reservation, and can hardly be regarded as a contractual stipulation with respect to the title and estate which the second deed purports to convey. The recital certainly does not amount to a conclusive admission or create an estoppel of record as to the legal effect of either the reservation or the conveyance and cannot be treated as a waiver of the terms of the general warranty or the rights of the grantees thereunder.

The contract of sale between respondent and the Pratts and the loan application furnished by the latter to Kansas City Life make it clear that the parties intended for respondent to reserve a one-fourth mineral interest in addition to that previously reserved by the Walls, but neither of these instruments was recorded. It also appears from the evidence that prior to the discovery of oil, the delay rentals were divided one-half to the Pratts, one-fourth to the Walls and one-fourth to respondent. The contract and loan application as well as the recital in the deed of trust and the dealings of the parties might be material in an action to reform the deed, but can have no bearing upon the construction of the unambiguous conveyance made by respondent to the Pratts. We have concluded that respondent is not entitled to prevail on the basis of the recorded title instruments as they now stand.

■ Respondent did not specifically pray for reformation of his deed to the Pratts, but the petition includes a prayer for general relief and allegations of mutual mistake and that respondent was entitled to have the instrument corrected to carry out the purpose and intent of the parties. There is also an alternative specific prayer that a trust be decreed in his favor against the one-fourth mineral interest in controversy. The petition in this form constitutes a sufficient demand for either reformation of the deed or the creation of a constructive trust, but the case evidently was not tried on either of these theories. In deciding whether to render judgment here or remand the case for a new trial, however, we should determine whether respondent may be entitled to equitable relief.

■ The record suggests that the parties to the deed may have been mutually mistaken as to the legal effect of its provisions and believed that the instrument effectively reserved to respondent a one-fourth mineral interest in addition to that already owned by the Walls. Against such a mistake of law, equity will grant relief by way of reformation if the circumstances otherwise warrant an exercise of its power. Kelley v. Ward, 94 Texas 289, 60 S.W. 311; Norris v. W. C. Belcher Land Mortgage Co., 98 Texas 176, 82 S.W. 500, 83 S.W. 799; Gilbert v. Smith, Com. App., 49 S.W. 2d 702, 86 A.L.R. 445. These decisions are in harmony with Section 51 of the Restatement on Restitution, which states that "a person who, because of a mistake of law as to the effect of words used in a conveyance, has transferred to another more than he intended and more than the parties mutually agreed he should do, is entitled to restitution of the excess * * * *." The authorities indicate that the Pratts, while

they owned the property, may also have held the mineral interest under a constructive trust for respondent's benefit. See Biggs v. Poling, Texas Civ. App., 134 S.W. 2d 801 (wr. dis. judg. cor.) ; Restatement on Restitution, Section 163, Comment *k* under Section 160; Bogert, Trusts and Trustees, Vol. 3, Part 1, p. 26, Section 474.

Respondent is not entitled to equitable relief against a bona fide purchaser, however, and he has the burden of showing that petitioner does not enjoy that status. The present record points to only two grounds that might be urged in support of the conclusion that petitioner is not an innocent purchaser for value. Respondent contends and the Court of Civil Appeals held that the deed executed by the Pratts to petitioner and Haley is a mere quitclaim. We do not agree.

With the exception of the provisions quoted below, the conveyance in question is in the form of a general warranty deed with vendor's lien. It recites a consideration of $10.00 and other good and valuable considerations and the assumption by the grantees of the balance owing on the encumbrance to Kansas City Life, and purports to grant, sell and convey the 417 acres of land described by metes and bounds therein. The following provisions appear immediately after the property description:

"It is the intention of the grantors herein to convey and they do hereby convey all the land enclosed by the two sets of field notes set out above regardless of whether such land is situated within the two surveys named, or elsewhere.

"It is agreed and understood, however, that this conveyance is made subject to any outstanding mineral or royalty interest now owned of record by persons who are not parties to this conveyance, *but grantors herein have and do hereby convey all mineral and royalty interests owned by them in said land including specifically but not by way of limitation, all leasing rights or leasing privileges owned by them.*

"It is also agreed that this conveyance is made subject to all outstanding valid and subsisting oil and gas leases now of record in Taylor County, Texas, covering the land herein conveyed or any part thereof." (Emphasis supplied).

These recitals are followed by the usual habendum clause, covenant of general warranty and reservation of an express vendor's lien.

■ The only stipulation in the deed which lends any support to respondent's position is that quoted in italics above. This language standing alone might be consistent with an intention to convey only such mineral interests as were owned by the grantors, but it is well settled that in determining whether a deed is a conveyance of the land or a quitclaim, the intention of the parties must be ascertained from a consideration of the entire instrument. The presence of words usually found in a quitclaim deed is not controlling if the instrument as a whole reveals an intention to convey the land rather than a mere chance of title. Cook v. Smith, 107 Texas 119, 174 S.W. 1094; Garrett v. Christopher, 74 Texas 453, 12 S.W. 67; Williams v. Rabb, Texas Civ. App., 161 S.W. 2d 121 (wr. ref.).

The granting clause of the deed plainly conveys the land, which ordinarily includes the minerals, subject only to outstanding mineral or royalty interests "of record" and oil and gas leases "of record." By the terms of the habendum and warranty clauses, it was stipulated that the grantees were to have and to hold "said premises" and that the grantors would warrant and forever defend the title thereto. These provisions show very clearly that the parties did not intend to convey only the grantors' title and interest in the minerals. From a reading of the entire instrument, it is our opinion that the italicized language was included simply to emphasize that the grantors were retaining no interest in the minerals and not for the purpose of making the instrument a quitclaim of the mineral estate. Recitals of this kind are frequently inserted in deeds out of an overabundance of caution, and unless a contrary intention is clearly disclosed, they will not be permitted to override the remaining provisions of the instrument and convert an otherwise plain conveyance of the land into a mere quitclaim. We hold that the deed to petitioner and Haley is not a quitclaim.

■ Petitioner undoubtedly had constructive notice of the deed of trust executed by the Pratts to Kansas City Life, because the instrument was duly recorded before his purchase. With the qualification announced in Carter v. Hawkins, 62 Texas 393, however, the rule is established in this state that the records operate as notice only of the facts actually exhibited thereby, and not those which might have been ascertained by such inquiries as an examination of the record would have induced a prudent man to make. See Wiseman v. Watters, 107 Texas 96, 174 S.W. 815, and authorities there cited. The recital in the deed of trust quoted above and the mineral reservations referred to therein do not in themselves disclose that the parties to the deed

executed by respondents were mutually mistaken as to its legal effect and intended to convey only the surface and one-half of the minerals. The mere recording of the deed of trust is not, therefore, suffiicient to charge petitioner as a matter of law with constructive notice of the mistake.

The evidence fails to show whether petitioner was acquainted with the provisions of the deed of trust, but it does indicate that he knew of the existence of the instrument. The conveyance from the Pratts recites his assumption of the balance unpaid on the encumbrance to Kansas City Life "secured by a certain deed of trust covering the following described property, of record in the Deed of Trust Records of Taylor County, Texas." In the light of this showing and since no attempt has been made to develop the facts bearing on respondent's right to equitable relief, we think it should be assumed for the purpose of this opinion that petitioner had actual knowledge of the provision making the rights of the trustee subordinate to the mineral interests reserved in the two deeds. This recognition by the grantees in the second conveyance of the existence of two district mineral reservations might well suggest to a prudent purchaser that the provisions and legal effect of the deed were not in accordance with the agreement and understanding of the parties. Whether a person of ordinary prudence with knowledge of this recital would have been put on inquiry and whether a diligent search would have led to a discovery of the mistake are issues to be determined by the trier of fact under all the evidence. See Gibson v. Morris, Texas Civ. App., 47 S.W. 2d 648 (wr. ref.).

■ This suit was filed almost six years after respondent conveyed the land to the Pratts. Any cause of action he may have for reformation or to charge petitioner as a constructive trustee is governed by the four-year statute of limitation, which petitioner pleaded. Whether a suit is one for the recovery of real estate within the exception to that article does not depend upon the form of the pleadings but upon the nature of the title asserted by the plaintiff. The deed executed by respondent is not void with respect to the mineral interest in controversy but stands as an impediment to his right to recover same. Before he can show title thereto, the equitable powers of the court must be invoked to avoid the effect of that instrument. The title which he asserts will not, therefore, support an action of trespass to try title and the suit is not one for the recovery of real estate. See Neill v. Pure Oil Co., Texas Civ. App., 101 S.W. 2d 402 (wr. ref.) and authorities there cited. An apparent but not a true exception to this rule is the case in which a deed is signed under

a fraudulently induced belief that the instrument is of an entirely different character. In that situation the grantor never parts with his superior equitable title and may sue for recovery of the land without first setting aside the conveyance. See Hall v. Miller, Texas Civ. App., 147 S.W. 2d 266 (wr. dis. Judg. cor.) ; Tijerina v. Tijerina, Texas Civ. App., 290 S.W. 2d 277 (no writ).

The statute of limitation began to run when the mistake was, or in the exercise of reasonable diligence should have been, discovered. See Texas Osage Co-operative Royalty Pool v. Garcia, Texas Civ. App., 176 S.W. 2d 798 (wr. ref. w.m.) ; Clopton v. Cecil, Texas Civ. App., 234 S.W. 2d 251 (wr. ref. n.r.e.) While the record does not disclose when respondent discovered the mistake, he stated that there was no question about the mineral reservation in his favor until oil was discovered about five years after the deed was delivered. This testimony suggests that he may not have discovered the mistake more than four years before the suit was filed, and the evidence showing that he was paid one-fourth of the delay rentals for about five years indicates that there may be an issue of fact as to whether he should have done so. With the record in this condition, we think the justice of the case requires that the cause be remanded for a trial of respondent's right to equitable relief. Rule 505, Texas Rules of Civil Procedure.

The judgments of the courts below are reversed, and the cause is remanded to the district court for a new trial.

Opinion delivered February 18, 1959.

MR. JUSTICE GRIFFIN, joined by JUSTICE SMITH, dissenting.

I believe that the decisive question in this case is whether Miles is purchaser without notice of the Martins' claimed equitable title to ¼th of the minerals.

I agree that the deed from the Pratts to Miles and Haley conveying the property is a warranty deed. The granting clause conveyed certain described land in Taylor County, Texas.

A part of the recited consideration in that deed was the assumption and agreement by the said Carl Miles and O. B. Haley to pay a certain sum of money owing to Kansas City Life Insurance Company as of January 1, 1955, and secured by a certain deed of trust lien of record in the Deed of Trust Rec-

ords of Taylor County, Texas. In my opinion, this recitation was notice to Miles and Haley of all the provisions of the deed of trust which might affect the title to the land conveyed. In the deed of trust we find the recitation that the deed of trust lien is "subject to mineral interest reserved in deed from L. A. Wall and wife to J. O. Martin dated December 22, 1950, recorded in Volume 417, Page 600, Deed Records of said [Taylor] County, and to mineral interest reserved in deed from J. O. Martin and wife to Jabe M. Pratt and Carl P. Pratt dated January 12, 1951." The deed of trust was dated January 22, 1951 but not recorded until January 31, 1951 at 4:20 p.m. The Martins' deed was dated January 12, 1951 and recited the vendor's lien note for $6,500 due on or before 30 days after date and other usual recitations as to the vendor's lien, interest, payee, etc. The Martins' deed to the Pratts was not recorded until January 31, 1951 at 4:20 p.m.

Unquestionably, the Pratts acknowledged and recognized the reservation of ¼th of the minerals in favor of the Martins and the sale was made upon such a basis. The Martins and the Pratts divided the delay rentals received from the oil and gas lease on the land on the basis of ¼th to the Martins, ½ to the Pratts and ¼th to Wall. This division continued during the ownership of the land by the Pratts. The Martins' deed to the Pratts conveyed the legal title to such ¼th minerals to the Pratts, but left the equitable title or claim to such ¼th mineral interest in the Martins. Biggs v. Poling, (1939) Texas Civ. App., 134 S.W. 2d 801, dism. cor. judg. Unless Miles is innocent purchaser from the Pratts he too is charged with knowledge of the Martins' claims. The burden of showing the Miles was not an innocent purchaser rested upon Martin. 43-B Texas Jur. 91, Sec. 782 and authorities therein cited.

Miles acquired his title to this property by virtue of a deed from the Pratts to Miles and Haley, dated January 8, 1955. This deed is a warranty deed conveying the land subject to "any outstanding mineral or royalty interest now owned of record by persons who are not parties to this conveyance, but grantors herein have had and do hereby convey all mineral and royalty interests owned by them in said land, * * *". The "subject to" clause was a limitation on the estate conveyed by the granting clause, and excepted from the conveyance the mineral or royalty interest "now" (at the date of the deed) owned of record by persons not parties to the deed, i.e., all parties except the Pratts and Miles. Mineral and royalty interests of such "other" parties did not pass to Miles et al. by the deed from the Pratts. Koker-

not v. Caldwell, (1950), Texas Civ. App., 231 S.W. 2d 528, ref.; Steel v. Crossland, (1952) Texas Civ. App., 252 S.W. 2d 784, ref.; Harris v. Windsor, (1956) 156 Texas 324, 294 S.W. 2d 798; Gibson v. Turner, (1956), 156 Texas 289, 294 S.W. 2d 781, 787, (6, 7); 14-B Texas Jur. 724, Sec. 255, *Id.* p. 775, Sec. 304.

The matters set out in the muniments of title under which Miles claimed were sufficient to put a reasonably prudent person upon inquiry as to the basis of the Martins' claim to own a mineral interest in the land. Smith v. Estill, 87 Texas 264, 28 S.W. 801; Gasch v. Vrana, (1914), Texas Civ. App., 167 S.W. 757, ref.; Marshburn v. Stewart, (1923) 113 Texas 507, 254 S.W. 942, bot. 1st. col. p. 945; Easterling v. Murphey, (1928), Texas Civ. App., 11 S.W. 2d 329, ref.; Lasater v. Hinson, (1935) Texas Civ. App., 84 S.W. 2d 874, no writ history; Strong v. Strong, (1936); 128 Texas 470, 98 S.W. 2d 346, 109 A.L.R. 739; Matthews v. Rains County, (1947), Texas Civ. App., 206 S.W. 2d 852, ref., n.r.e.; Wessels v. Rio Bravo Oil Co., (1952) Texas Civ. App., 250 S.W. 2d 668; 43-B Texas Jur. 35, Sec. 730, et seq.

Miles having notice that Martin was claiming to own a mineral interest in the land was under the duty to make inquiry regarding such claim, and to pursue such inquiry with diligence and prudence. Before Miles can be charged with knowledge of the basis of the claim, it must appear that the inquiry suggested by the facts, if followed by reasonable diligence, would have led to actual knowledge of the basis and validity of such claim. Fleming v. Ashcroft, (1943) 141 Texas 41, 175 S.W. 2d 401 (5, 6); Marshburn v. Stewart, supra. Miles is chargeable with notice not only with the recitals in the deed of trust, but also with notice of whatever a diligent inquiry would have revealed. Carter v. Hankins, 62 Texas 393; Yates v. Buffalo State Bank, (1921) Texas Civ. App., 229 S.W. 619 (4), no writ history, and authorities therein cited.

According to the pleadings, Martin and Miles each is a resident in Taylor County, Texas. All deeds, leases, etc. signed by Martin show him to be a resident of Taylor County, Texas. One of the Pratt owners also is a resident of Taylor County, Texas. Under the circumstances of this case, Miles was required to make inquiry of both Martin and Pratt to ascertain what mineral interest Martin was claiming. Had he asked either Martin or Pratt, he would have found out that Martin was claiming ¼th of the minerals; that Martin had been receiving ¼th of the delay rentals payable under the lease covering this land; that the con-

tract of sale between the Martins and the Pratts specifically provided that Martin was to reserve for himself ¼th of the minerals under this land; that the reference in the deed of trust as to the Martins' mineral reservation was a reference to this ¼th mineral interest; that the Pratts were not claiming to own more than ½ of the mineral interest in the land. Miles did not testify on the trial of this case, but relied upon his record title. No inquiry by Miles is shown in the record. I think the record shows that had Miles made any inquiry whatever, he would have discovered the Martins' equitable title.

Miles was not an innocent purchaser and could claim no rights in the minerals adverse to Martin's ¼th mineral interest. "* * * In respect of a matter of which he had notice, the purchaser merely occupies the position of his vendor, his rights being subject to the same limitations as those of the vendor. Accordingly, a purchaser of a legal or equitable title who has notice that the property affected by a legal or equitable claim of another takes subject to such claim." 43-B Texas Jur. 25-26, Sec. 718.

I would affirm the judgments of both courts below.

Opinion delivered February 18, 1959.