**NEWPORT OIL COMPANY, Appellant,**

v.

**Theo LAMB et al., Appellees.**

**No. 3686.**

Court of Civil Appeals of Texas.

Eastland.

Jan. 5, 1962.

Rehearing Denied Jan. 26, 1962.

King, Willoughby & Vletas, Abilene, for appellant.

Sentell & Rosser, Snyder, for appellees.

WALTER, Justice.

Theo Lamb and Roger B. Mize filed suit against Newport Oil Company and others for a declaratory judgment to construe a reservation of an overriding royalty in an

oil and gas lease dated May 5, 1959, from Newport Oil Company to Delta Oil Company.

In a non-jury trial, the court found that, by reason of the proportionate reduction clause, the overriding royalty of ⅛th of ⅞ths was reduced in proportion to the ⅛th interest actually owned by Newport at the time of executing such lease.

Newport has appealed, contending the court erred in holding (1) Lamb and Mize were innocent purchasers from Delta (2) that Lamb and Mize were innocent purchasers from Delta under a quitclaim assignment (3) that a typewritten rider did not take precedence over the printed matter in the lease and (4) in failing to reform the oil and gas lease for Newport.

Newport owned an undivided ⅛th of the oil, gas and other minerals under the Goldsmith "B" lease. The Delta Oil Company owned the oil and gas leasehold on the remaining ⅞ths interest. On May 5, 1959, Newport executed to Delta an oil, gas and mineral lease on its ⅛th interest reserving an overriding royalty interest as follows:

"Lessor hereunder hereby reserves unto itself, its successors and assigns an additional one-eighth (⅛) of seven-eighths (⅞) overriding royalty of all of the oil, gas and other minerals produced on the above described property. Said one-eighth (⅛) of seven-eighths (⅞) of the oil and/or gas to be payable to lessor in like manner and terms as the usual land owner's one-eighth (⅛) royalty."

This was in addition to the royalty of ⅛th created by the lease. The proportionate reduction clause provided that if Newport owned a less interest in the property than the entire and undivided fee simple estate, the royalty should be paid only in the proportion which Newport's interest bears to the whole. The pipe line company issued its division order granting Newport a full ⅛th of ⅞ths overriding royalty without reduction. This division order was approved by Newport and Delta. The pipe line company continued to pay for the oil on this basis for approximately a year.

No findings of fact or conclusions of law were requested or filed. It is elementary that when the appellant contests the trial court's judgment, without requesting findings of fact or conclusions of law, we must assume that the trial court's findings were in support of its judgment; and the judgment must be affirmed if there is any evidence of probative force to support it upon any theory authorized by law. The City of Abilene et al. v. Meek et al., Tex.Civ.App., 311 S.W.2d 654, (Writ Ref.). We hold the court was warranted in holding that the printed proportionate reduction clause in the lease was applicable to the typewritten overriding royalty provision. Newport contends the printed proportionate reduction clause is not applicable to the typewritten overriding royalty provision. In support of its contention Newport cites McMahon v. Christmann, 157 Tex. 403, 303 S.W.2d 341. The Supreme Court was called upon in the McMahon case to construe an oil and gas lease with a printed proportionate reduction clause and a typewritten rider, reading as follows:

"The lessors herein reserved unto themselves their heirs and assigns, *without reduction,* as an overriding royalty, *a net* ¹⁄₃₂nd of ⅝ths of all oil or gas produced and saved from the above described premises, free of cost or expense to the credit of the lessors into the storage tank or tanks or into the pipeline to which the well or wells on said land may be connected." (Emphasis Ours.)

It will be noted that the overriding royalty provision in the McMahon case uses the words "without reduction" and "net", which we do not have in the overriding royalty provision in the case at bar. Judge

Calvert, speaking for the Supreme Court in the McMahon case, said:

"If the clause providing for the 1/32nd overriding royalty did not provide that the reserved royalty was 'without reduction' the problem of construing the lease would present no great difficulty. The overriding royalty is, withal, 'royalty', State National Bank of Corpus Christi v. Morgan, 135 Tex. 509, 143 S.W.2d 757, and Griffith v. Taylor, [156] Tex. [1], 291 S.W.2d 673, and in the absence of the words 'without reduction' the proportionate reduction clause would require its reduction to a 1/192nd of production."

■ Apparently Newport and Delta were mutually mistaken as to the legal effect of the overriding royalty provision of the oil and gas lease. As pointed out by our Supreme Court in Miles v. Martin, 159 Tex. 336, 321 S.W.2d 62, by Justice Walker, "Equity will grant relief by way of reformation if the circumstances otherwise warrant an exercise of its power. * * * Respondent is not entitled to equitable relief against a bona fide purchaser, however, and he has the burden of showing that petitioner does not enjoy that status."

Mize testified he had no figures showing the interest of Newport but that he was purchasing Delta's entire interest under the Goldsmith lease; that before entering into this contract, he had no specific knowledge as to what override Newport was claiming; that he presumed Delta's representative furnished the abstracts and he had them examined and received a statement from his attorney as to the interest owned by Delta; that he relied on such statement in purchasing such property.

J. Mark McLaughlin, an attorney, testified he found nothing in the abstracts which led him to believe that Newport was claiming anything other than the interest set out in its lease to Delta.

Newport filed an alternate plea and cross-action wherein it alleged:

"That it was the intention of the Newport Oil Company and Delta Oil Company at the time said lease was made that said reservation should have read as follows, to-wit:

'Lessor hereunder hereby reserves unto itself without reduction or regard to the proportionate reduction clause in this lease an additional 1/8 of 7/8 overriding royalty of oil, gas and other minerals.' "

Delta's offer to sell the Goldsmith "B" lease was made by telegram. No statement was made in the telegram about a mutual mistake that it and Newport had made in preparing the lease by leaving out the words, "without reduction or regard to the proportionate reduction clause" in the overriding royalty provision.

On May 23, 1960, Delta assigned its interest in the Goldsmith "B" lease to Lamb and Mize. This assignment from Delta to Lamb and Mize recites a consideration of $10.00 and other good and valuable considerations. The Goldsmith "B" lease is one of the five leases Delta offered for sale for a total consideration of Four Hundred & Ten Thousand Dollars. This offer was accepted. The Goldsmith "B" lease was assigned to Lamb and Mize and the other leases were assigned to their associates. The assignment also states that Delta "does hereby bargain, sell, assign, transfer and convey unto Theo Lamb and Roger B. Mize" . . . "all of its right, title and interest in and to the following described oil and gas leases." . . . "Delta Oil Company, its successors and assigns, does hereby covenant with Theo Lamb and Roger B. Mize, their heirs and assigns, that the said Delta Oil Company is the lawful owner of and has good title to the interests hereby conveyed; *and that the leases above described and hereby conveyed,* (Emphasis Ours) are valid, subsisting and in full force and effect; that the interest hereby conveyed are free and clear of all liens, encumbrances and adverse claims; that all severance taxes, produc-

**864**

tion taxes, ad valorem taxes, royalties and overriding royalties have been paid as required; that all conditions necessary to keep said leases in full force and effect have been duly performed; and that the said Delta Oil Company, its successors and assigns, will warrant and forever defend the title to the interests hereby conveyed and assigned against the lawful claims and demands of all persons whomsoever."

Newport contends this assignment is a mere quitclaim. Our Supreme Court in Miles v. Martin, 159 Tex. 336, 321 S.W. 2d 62, at page 68, speaking through Justice Walker, said: "But it is well settled that in determining whether a deed is a conveyance of the land or a quitclaim, the intention of the parties must be ascertained from a consideration of the entire instrument. The presence of words usually found in a quitclaim deed is not controlling if the instrument as a whole reveals an intention to convey the land rather than a mere chance of title."

"The character of an instrument as constituting a deed or merely a quitclaim is to be determined according to whether it assumes to convey the property described, and upon its face has that effect, or merely professes to assign the grantor's title. If, according to the face of the instrument, its operation is to convey the property, it is a deed. On the other hand, if it purports to transfer no more than the title of the grantor, it is only a quitclaim." Lange Texas Practice—Land Titles, Sec. 481 page 360.

After examining and considering the assignment in its entirety we are forced to the conclusion that Delta intended to convey the property itself and not merely assign its chance of title.

We have examined all of appellant's points and find no merit in them. They are overruled.

The judgment is affirmed.