**BAYLOR UNIVERSITY MEDICAL CENTER, et al., Plaintiffs,**

v.

**EPOCH GROUP, L.C., Defendant.**

No. Civ.A.3:03–CV–2392–G.

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 18, 2004.

---

Larry Hallman, Emanuela Prister, Burford & Ryburn, Dallas, TX, for Plaintiffs.

Elaine Cribbs Rizza, The Rizza Group, Washington, PA, Lee Foster Christie, Pope, Hardwicke, Christie, Harrell, Schell & Kelly, Fort Worth, TX, for Defendant.

## *MEMORANDUM ORDER*

FISH, Chief Judge.

Before the court is the motion of the defendant Epoch Group, L.C. ("Epoch") for summary judgment against the plaintiffs Baylor University Medical Center, Our Children's House at Baylor, Baylor Medical Center at Grapevine, Baylor Medical Center—Irving, and Baylor All Saints Medical (collectively, "Baylor" or "the plaintiffs"), pursuant to FED. R. CIV. P. 56, or to dismiss the plaintiffs' claims, pursuant to FED. R. CIV. P. 12(b)(6). For the reasons set forth below, Epoch's motion is denied.

### I. *BACKGROUND*

Baylor brought this breach of contract suit against Epoch to recover for medical services it provided to Efrain Delgado and Albertina Delgado ("the Delgados"). *See*

Plaintiffs' First Amended Complaint ("Complaint") ¶¶ 4–5. The Delgados, who are participants in an employee welfare benefit plan ("the Plan") sponsored by Van Enterprises, Inc. ("Van Enterprises"), received medical services from Baylor during the period of December 2001 to June 2002. *See* Defendant's Brief in Support of Third Motion to Dismiss/For Summary Judgment ("Motion") at 3, 4. Epoch, who serves as the "Claims Supervisor for the Plan," *id.* at 3, has not paid Baylor for medical services rendered to the Delgados. See *id.* at 5; *see also* Plaintiffs' Brief in Support of Response to Epoch's Third Motion to Dismiss/For Summary Judgment ("Response") at 3; Complaint ¶¶ 4, 11–15.

Epoch entered into a contract, the Subscriber Services Agreement, with Private Healthcare Systems, Inc. ("PHCS"), effective January 24, 2001. *See generally* Subscriber Services Agreement, *attached to* Complaint as Exhibit C. Pursuant to that agreement, Epoch received financial incentives to encourage participants in the Plan to choose treatment from medical providers in the PHCS network of providers. *See* Motion at 4. Baylor became a part of the PHCS network of providers by signing a Hospital Services Agreement with PHCS, effective January 1, 2002. *See* Complaint ¶ 5; Motion at 4; *see also* Hospital Services Agreement at 1, *attached to* Complaint as Exhibit 2. Pursuant to this agreement, individuals participating in a PHCS-related health plan gain access to Baylor's hospitals and other health care services. *See* Complaint ¶ 5; Motion at 4.

The Hospital Services Agreement, ¶ 2.2, requires that PHCS enter into Payor Acknowledgments with its "Payors," [1] includ-

ing Epoch,[2] for use of the PHCS provider network. *See* Complaint ¶ 6. The Hospital Services Agreement provides:

> PHCS represents and warrants that it has entered into Payor Acknowledgments with Payors for the use of the PHCS provider network.... Each Payor Acknowledgment between PHCS and a Payor will obligate the Payor (or its designee) to comply with the duties and obligations of this Agreement, including, but not limited to, paying for Covered Services rendered to Members....

Hospital Services Agreement ¶ 2.2. This agreement also requires Payors to timely pay all clean claims within forty-five calendar days from receipt of the claim:

> If Payor (directly or through its designee) does not pay within forty-five (45) days of receipt of a Clean Claim, Payor shall no longer be eligible for the rates set forth on *Schedule 1* and shall be obligated to pay Hospital at Hospital's Normal Billed Charges and Hospital may elect to terminate this Agreement....

*Id.* ¶ 4.4(a); *see also* Complaint ¶¶ 8–9.

Epoch signed a Payor Acknowledgment on January 29, 2001. *See* Payor Acknowledgment, *attached to* Subscriber Services Agreement as Exhibit L. In doing so, Epoch contracted with PHCS "to: (i) pay or arrange to pay PHCS Preferred Providers in accordance with the PHCS Preferred Provider Agreement for such Preferred Provider; and (ii) comply with the applicable terms and conditions of the PHCS Preferred Providers Agreements...." *Id.* ¶ 1.2; *see also* Complaint ¶ 7.

---

**1.** The Hospital Services Agreement defines a "Payor" as "an insurance company, employer health plans, Taft–Hartley fund, plan sponsors or other similarly situated entities or organizations...." Hospital Services Agreement at 2; *see also* Complaint ¶ 5.

**2.** The Hospital Services Agreement, ¶ 2.6(b), listed the Payors who have executed Payor Acknowledgments. The list includes Epoch. *See* Response at 15.

Baylor alleges that despite submitting its claims to Epoch for the medical care it provided to the Delgados, Epoch has not paid the charges contractually due. *See* Complaint ¶ 10. Consequently, on September 11, 2003, Baylor University Medical Center and Our Children's House at Baylor (together, "the Original Plaintiffs") filed suit against Epoch in the County Court at Law No. 4 of Dallas County, Texas, asserting a claim for breach of contract. *See* Plaintiffs' Original Petition ("Original Petition"),[3] *attached to* Amended Notice of Removal as Exhibit A–1.

On October 14, 2003, Epoch removed the case to this court pursuant to 28 U.S.C. § 1441. Epoch argues that the court has diversity jurisdiction under 28 U.S.C. § 1332(a), and that the court has federal question jurisdiction over Baylor's claims under 28 U.S.C. § 1331 because those claims are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq. See* Amended Notice of Removal ¶¶ 3, 4. The plaintiffs concede that there is diversity jurisdiction, as each of the plaintiffs is a Texas non-profit corporation and Epoch is a foreign corporation, and the amount in controversy exceeds $75,000. Response at 2; *see also* Complaint ¶¶ 1–2. The plaintiffs contest, however, that this court has federal question jurisdiction. Response at 2.

On May 5, 2004, the Original Plaintiffs, now joined by the newly added plaintiffs Baylor Medical Center at Grapevine, Baylor Medical Center—Irving, and Baylor All Saints Medical, filed their first amended complaint, asserting claims for breach of contract and late payment of claims. *See generally* Complaint. Baylor seeks recovery of over $115,000 in damages. See *id.* ¶¶ 11–17. Summarizing its argument, Baylor asserts:

> [b]ased upon its execution of the Payor Acknowledgment and the Subscriber Services Agreement, Epoch agreed to be bound by the terms and conditions of the Hospital Services Agreement between Baylor and [PHCS] ..., which included paying for health care services rendered to certain individuals on a timely basis.

*Id.* ¶ 4.

On May 24, 2004, Epoch filed the instant motion for summary judgment under FED. R. CIV. P. 56, arguing that, as a matter of law: (1) Baylor is not entitled to recover for breach of contract or for late payment of claims where Epoch was not a party to any contract with Baylor; and (2) ERISA completely preempts Baylor's breach of contract claims.[4] *See generally* Motion; Docket Sheet.

## II. ANALYSIS

### A. *Evidentiary Burdens on Motion for Summary Judgment*

Summary judgment is proper when the pleadings and evidence before the court

---

3. In their Original Petition, the Original Plaintiffs also filed suit against PHCS; however, the court has since dismissed Baylor's claims against PHCS without prejudice. *See* Order, *Baylor University Medical Center, et al. v. Epoch Group, L.C., et al.,* No. 3:03–CV–2392–G, filed Dec. 17, 2003; *see also* Response at 3.

4. Prior to filing this motion, the court denied as moot two similar motions filed by Epoch. *See* Motion to Dismiss/For Summary Judgment (filed Nov. 13, 2003); Second Motion to Dismiss/For Summary Judgment (filed Apr. 15, 2004). The court denied Epoch's first motion as moot after the court permitted Epoch to amend its notice of removal to allege a new ground for jurisdiction. *See* Order, *Baylor University Medical Center, et al. v. Epoch Group, L.C.,* No. 3:03–CV–2392–G, filed Mar. 22, 2004. The court denied Epoch's second motion as moot after Baylor amended its complaint to add several plaintiffs and a new claim. *See* Order, *Baylor University Medical Center, et al. v. Epoch Group, L.C.,* No. 3:03–CV–2392–G, filed Aug. 13, 2004.

show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); see also *Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir.1986). Nonetheless, summary judgment is a drastic remedy that should be used cautiously. *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir.1980).

While all of the evidence must be viewed in a light most favorable to the nonmovant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's summary judgment burden. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc)). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to its case and as to which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

### B. *When Multiple Documents Comprise One Contract*

Epoch argues that because there is no contractual relationship—*i.e.*, no privity—between Baylor and Epoch, it is entitled to judgment as a matter of law. *See* Motion at 19–23; Defendant's Reply to Plaintiffs' Response to Epoch's Third Motion to Dismiss/For Summary Judgment and Brief in Support ("Reply") at 7–8. Baylor, on the other hand, argues that the Hospital Services Agreement provides a three-part contractual relationship among Baylor, PHCS, and Epoch. *See* Response at 14–15 (citing Hospital Services Agreement ¶¶ 2.2, 2.6(b), 4.1(a), and 4.4(a)). According to Baylor, the Payor Acknowledgment expressly obligates Epoch to comply with the Hospital Services Agreement and to timely pay for medical services rendered to participants in the Plan. See *id.* at 15 (citing Payor Acknowledgment ¶ 1.2). The court agrees with Baylor.

It is "well-established law [in Texas] that instruments pertaining to the same transaction may be read together to ascertain the parties' intent." *Fort Worth Independent School District v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex.2000) (*"Fort Worth ISD"*); see also *Miles v. Martin*, 159 Tex. 336, 321 S.W.2d 62, 65 (1959). This is true "even if the parties executed the instruments at different times and the instruments do not expressly refer to each other," *Fort Worth ISD*, 22 S.W.3d at 840; see also *Board of Insurance Commissioners v. Great Southern Life Insurance Company*, 150 Tex. 258, 239 S.W.2d 803, 809 (1951); *IP Petroleum Company, Inc. v. Wevanco Energy, L.L.C.*, 116 S.W.3d 888, 899 (Tex.App.—Houston [1st Dist.] 2003, pet. denied), and even if the instruments "are not between the same parties." *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex.1981) (citing *Miles*, 321 S.W.2d at 65); see also *In re BP America Production Company*, 97 S.W.3d 366, 369–70 (Tex.App.—Houston [14th Dist.] 2003, no pet. h.). Thus, the court "may determine, as a matter of law, that multiple documents comprise a written contract," and, "[i]n appropriate instances, ... construe all the documents as if they were part of a single, unified instrument." *Fort*

*Worth ISD,* 22 S.W.3d at 840; see also *In re BP America,* 97 S.W.3d at 369.

█ In the case *sub judice,* the court concludes, as a matter of law, that the Hospital Services Agreement, the Subscriber Services Agreement, and the Payor Acknowledgment, constitute a single, unified contract when it comes to Epoch's obligation to timely pay Baylor's clean claims. See *Fort Worth ISD,* 22 S.W.3d at 840. While the instruments were executed by the parties at different times, *see, e.g.,* Subscriber Services Agreement (Jan. 24, 2001), Payor Acknowledgment (Jan. 29, 2001), and Hospital Services Agreement (Jan. 1, 2002), the instruments expressly refer to one another, showing an intertwined relationship between the parties and the instruments at issue. In the Hospital Services Agreement, ¶ 2.2, PHCS makes a representation and warranty that each Payor Acknowledgment between PHCS and a Payor will obligate the Payor to comply with the duties and obligations of the Hospital Services Agreement. PHCS commits to providing Baylor a list of Payors which have Payor Acknowledgments, *see* Hospital Services Agreement ¶ 2.6(b), a list which includes Epoch, see *id.* Exhibit 2. The Hospital Services Agreement also provides that each Payor shall pay the fees specified in Schedule 1 of that agreement, *id.* ¶ 4.1(a), and that each Payor shall pay all clean claims for covered services from Baylor within forty-five calendar days, *id.* ¶ 4.4(a). The Payor Acknowledgment, which is included in the Subscriber Services Agreement, not only acknowledges the contracts between PHCS and health care providers such as Baylor, *see* Payor Acknowledgment, Recital B, but also expressly requires Payors to pay for health care services and to comply with preferred provider agreements. *Id.* ¶¶ 1.2, 1.7.

Indeed, all three instruments were required to complete the relationship between the parties. The Subscriber Services Agreement, which provided discounts from PHCS to Payors, could not operate effectively without PHCS contracting with providers through hospital services agreements. See *Board of Insurance Commissioners,* 239 S.W.2d at 809; *Jones,* 614 S.W.2d at 98–99. The very foundation of the discounts offered in Subscriber Services Agreement appears to be the agreements between PHCS and providers such as Baylor. Moreover, Payor Acknowledgments serve no apparent purpose other than to commit Payors to comply with the terms and conditions of the provider agreements.

Epoch argues that Baylor cannot seek any benefits under the Subscriber Services Agreement or the Payor Acknowledgment, as both instruments disclaim liability to third-party beneficiaries. *See* Motion at 19–21. Epoch is only partially right. Certain provisions in each instrument generally disclaim the liability of Epoch and PHCS to third-party beneficiaries, including Baylor. *See* Subscriber Services Agreement ¶ 9.8;[5] Payor Acknowledgment ¶ 1.6;[6] *cf.* Hospital Services Agree-

---

5. The third-party liability disclaimer in Subscriber Services Agreement ¶ 9.8 provides:

    Nothing in this Agreement, whether express or implied, shall be deemed to confer on any person, other than the parties hereto and their successors and assigns, any right, obligation, remedy, or liability.

6. The third-party liability disclaimer in Payor Acknowledgment ¶ 1.6 provides:

    Nothing contained in this Agreement will be construed to make PHCS or Payor ... liable to persons or entities not parties hereto in situations in which they would not otherwise be subject to liability. Nothing contained herein will be construed as, or be deemed to create, any rights or remedies in any party other than PHCS or Payor.

ment ¶ 6.4. However, other provisions specifically obligate Epoch to pay Baylor for medical services rendered and to otherwise comply with the Hospital Services Agreement. *See* Payor Acknowledgment ¶¶ 1.2, 1.7; Hospital Services Agreement ¶¶ 2.2, 4.1(a), and 4.4(a).

When contractual provisions conflict, as here, they will be reconciled and harmonized whenever possible by any reasonable interpretation, so that the contract as a whole may be given effect. *Ogden v. Dickinson State Bank,* 662 S.W.2d 330, 332 (Tex.1983); *Trudy's Texas Star, Inc. v. Weingarten Realty Investors,* No. 03–03–00538, 2004 WL 1792374 at *3 (Tex. App.—Austin Aug. 12, 2004, no pet. h.). Baylor has offered the only reasonable interpretation of these conflicting provisions.

Baylor contends that it and PHCS contemplated that Payors would become responsible to perform the duties under the Hospital Services Agreement by execution of a Payor Acknowledgment. Response at 16–17. The court concurs; Epoch and its clients (*e.g.,* Van Enterprises) were only entitled to the benefits of the Hospital Services Agreement if Epoch agreed to be a Payor by executing the Payor Acknowledgment. Upon becoming a Payor, Epoch assumed *both rights—i.e.,* the right to discounts for medical services rendered by Baylor—*and obligations—i.e.,* the obligation to pay Baylor in accordance with the Hospital Services Agreement. *Id.* at 17.

Therefore, the court finds, as a matter of law, that there is a contractual relationship between Baylor and Epoch via the Hospital Services Agreement. Accordingly, Epoch's motion for summary judgment on this basis must be denied.

## C. ERISA Preemption of Baylor's Claim

In addition, Epoch argues that Baylor's complaint clearly alleges claims arising under federal law. *See* Amended Notice of Removal ¶ 3; Motion at 5–19; Reply at 1–7. Specifically, Epoch asserts that because Baylor's cause of action for breach of contract[7] constitutes a claim for benefits under an employee welfare benefit plan that is subject to ERISA, Baylor's state law claim is preempted by ERISA and, therefore, Epoch is entitled to judgment as a matter of law. *See* Motion at 5–19, 24. The court is unpersuaded, however, that Baylor's breach of contract claim is completely preempted by ERISA.

### 1. ERISA Preemption Generally

District courts have federal question jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331; *Frank v. Bear Stearns & Company,* 128 F.3d 919, 922 (5th Cir.1997). In determining whether a claim arises under federal law, the well-pleaded complaint rule allows a plaintiff to be the "master to decide what law he will rely upon" in pursuing his claims. *The Fair v. Kohler Die & Specialty Company,* 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913); see also *Beneficial National Bank v. Anderson,* 539 U.S. 1, 6, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003); *Aaron v. National Union Fire Insurance Company of Pittsburg, Pennsylvania,* 876 F.2d 1157, 1160–61 (5th Cir.1989), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990). Where potential remedies exist under both state and federal law, a plaintiff may choose to proceed only under state law and avoid federal court jurisdiction. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct.

---

**7.** Epoch concedes, however, that "Baylor's state law claim ... for breach of contract regarding Late Claims is not preempted by ERISA." Motion at 5, n. 1.

2425, 96 L.Ed.2d 318 (1987); *Carpenter v. Wichita Falls Independent School District*, 44 F.3d 362, 366 (5th Cir.1995). "There is an exception to the well-pleaded complaint rule, though, if Congress 'so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir.2003) (en banc) (quoting *Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)), *cert. denied*, —— U.S. ——, 124 S.Ct. 1044, 157 L.Ed.2d 889 (2004).

◼ The Supreme Court has held that state-law claims seeking relief within the scope of ERISA § 502(a)(1)(B) must be recharacterized as arising under federal law, and as such, are removable to federal court. *Metropolitan Life*, 481 U.S. at 60, 67, 107 S.Ct. 1542; see also *Ramirez v. Inter–Continental Hotels*, 890 F.2d 760, 762 (5th Cir.1989). According to § 502(a)(1)(B), ERISA's civil enforcement provision:

§ 1132. Civil enforcement

(a) Persons empowered to bring a civil action

A civil action may be brought—

(1) by a participant or beneficiary—

\* \* \* \* \* \*

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. . . .

29 U.S.C. § 1132(a)(1)(B). When a claimant seeks relief "within the scope of [ERISA's] civil enforcement provisions,"

his or her claims are subject to *complete preemption. Metropolitan Life*, 481 U.S. at 66, 107 S.Ct. 1542. Complete preemption "'recharacterizes' preempted state law claims as 'arising under' federal law for the purposes of . . . making removal available to the defendant." *McClelland v. Gronwaldt*, 155 F.3d 507, 516 (5th Cir. 1998); see also *Johnson v. Baylor University*, 214 F.3d 630, 632 (5th Cir.), *cert. denied*, 531 U.S. 1012, 121 S.Ct. 567, 148 L.Ed.2d 486 (2000).

◼ Another type of preemption, known as "conflict" or "ordinary" preemption, "arises when a federal law conflicts with state law, thus providing a federal defense to a state law claim, but does not completely preempt the field of state law so as to transform a state law claim into a federal claim." *Arana*, 338 F.3d at 439. Under ERISA's conflict preemption provision, § 514(a), "any and all State laws [are displaced or superceded] insofar as they . . . relate to any employee benefit plan". 29 U.S.C. § 1144(a); see also *Christopher v. Mobil Oil Corporation*, 950 F.2d 1209, 1217 (5th Cir.), *cert. denied*, 506 U.S. 820, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992). Any state law "relates to" an ERISA plan "if it has a connection with or reference to" an employee benefit plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).[8]

The Fifth Circuit, in *Memorial Hospital System v. Northbrook Life Insurance Company*, 904 F.2d 236, 245 (5th Cir.1990), outlined two unifying characteristics of cases finding ERISA preemption of a plaintiff's state law causes of action. See also *Cypress Fairbanks Medical Center Inc. v. Pan–American Life Insurance*

8. While this "relate to" standard must be interpreted expansively to give the words their broad common-sense meaning, see *Egelhoff v. Egelhoff ex rel. Breiner,* 532 U.S. 141, 146, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001),

"[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. 2890.

*Company,* 110 F.3d 280, 283 (5th Cir.), *cert. denied,* 522 U.S. 862, 118 S.Ct. 167, 139 L.Ed.2d 110 (1997); *Foley v. Southwest Texas HMO, Inc.,* 226 F.Supp.2d 886, 894 (E.D.Tex.2002); *Baylor University Medical Center v. Arkansas Blue Cross Blue Shield ("Baylor I"),* 331 F.Supp.2d 502, 507 (N.D.Tex.2004) (Fish, Chief J.). Preemption of a plaintiff's state law causes of action has been found when: (1) the state law claim addresses areas of exclusive federal concern, and (2) the claim directly affects the relationship between traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries. *Memorial Hospital,* 904 F.2d at 245; *Baylor I,* at 507; *Foley,* 226 F.Supp.2d at 894.

■ First, preemption is appropriate, according to *Memorial Hospital,* where the state law addresses areas of exclusively federal concern, including the right to receive benefits under the terms of an ERISA plan. 904 F.2d at 245. Congress' purpose in enacting ERISA was "to promote the interests of employees and their beneficiaries in employee benefit plans, . . . and to protect contractually defined benefits." *Firestone Tire & Rubber Company v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (internal citations and quotations omitted). The Supreme Court has cautioned, however, that it has "addressed claims of [ERISA] preemption with the starting presumption that Congress [did] not intend to supplant state law." *New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Insurance Company,* 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); see also *Fort Halifax Packing Company, Inc. v. Coyne,* 482 U.S. 1, 19, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) ("ERISA preemption analysis 'must be guided by respect for the separate spheres of governmental authority preserved in our federalist system.'").

Lawsuits against ERISA plans for commonplace, run-of-the-mill state-law claims—although obviously affecting and involving ERISA plans—are not preempted by ERISA. *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 833, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). Accordingly, the Fifth Circuit and federal district courts within Texas have found that certain state law causes of action are not preempted by ERISA when brought by independent, third-party health care providers. See, *e.g., Transitional Hospitals Corporation v. Blue Cross and Blue Shield of Texas, Inc.,* 164 F.3d 952, 954 (5th Cir.1999) (claims for breach of contract, common law misrepresentation, and statutory misrepresentation under the Texas Insurance Code); *Memorial Hospital,* 904 F.2d at 238 (claims for deceptive and unfair trade practices under the Texas Insurance Code, breach of contract, and negligent misrepresentation); *Perkins v. Time Insurance Company,* 898 F.2d 470, 473 (5th Cir.1990) (claim for tortious breach of contract); *Baylor I,* at 508–12 (claims for breach of contract and late payment of claims under the Texas Insurance Code); *Methodist Hospitals of Dallas v. Wal–Mart Stores, Inc.,* No. 3:02–CV– 0656, 2003 WL 21266775 at *1, 3 (N.D.Tex. May 30, 2003) (claims for breach of contract and negligent misrepresentation); *Foley,* 226 F.Supp.2d at 890, 895, 902 (claims for late payment of claims under the Texas Insurance Code and unjust enrichment); *Rogers v. CIGNA Healthcare of Texas,* 227 F.Supp.2d 652, 655 (W.D.Tex.2001) (claims for breach of contract and quantum merit).

■ Second, preemption is appropriate, according to *Memorial Hospital,* where the state law directly affects the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and bene-

ficiaries. 904 F.2d at 245. For instance, a hospital's state law claims for breach of fiduciary duty, negligence, equitable estoppel, breach of contract, and fraud are preempted by ERISA when the hospital seeks to recover benefits owed under a plan to a plan participant who has assigned her right of benefits to the hospital. See *Hermann Hospital v. MEBA Medical & Benefits Plan,* 845 F.2d 1286, 1290 (5th Cir.1988). However, absent status as an assignee, health care providers are not traditional ERISA entities. See *Memorial Hospital,* 904 F.2d at 249 (stating that health care providers were not a party to the ERISA bargain struck by Congress between health benefit plans and their participants).

### 2. *Baylor's Contract Claims Against Epoch*

■ In this case, Baylor's breach of contract claim is not completely preempted because its claim does not satisfy the two-pronged preemption test set forth in *Memorial Hospital.*

First, enforcing a contract to provide medical services in exchange for payment for those services is hardly an exclusive area of federal concern. See *Memorial Hospital,* 904 F.2d at 246. Baylor is suing Epoch in Baylor's capacity as a party to, or third-party beneficiary of, three intertwined contracts between Baylor, PHCS, and Epoch (*i.e.,* the Subscriber Services Agreement, the Payor Acknowledgment, and the Hospital Services Agreement). *See* Response at 5. Thus, Baylor is asserting a right of action against Epoch pursuant to state contract law. See, *e.g., Memorial Hospital,* 904 F.2d at 250 (finding that a provider's claim is not completely preempted where it is "independent of the plan's actual obligations under the terms of the insurance policy and in no way seeks to modify those obligations"); *Rogers,* 227 F.Supp.2d at 655 (stating that a provider's claims for breach of contract and quantum

merit were not preempted by ERISA because they were "not based on CIGNA's promise to provide health care to its insureds, but on CIGNA's promise (express or implied) to pay *Plaintiffs* for providing the services") (emphasis in original). Its contract claim is neither dependent upon nor derived from the Delgados' rights to recover benefits under an ERISA plan. See *Memorial Hospital,* 904 F.2d at 249, n. 20 (characterizing *Hermann Hospital,* 845 F.2d at 1290, as holding that a third-party provider's state-law claims were preempted by ERISA where those claims were "dependent on, and derived from, the rights of the plan beneficiaries to recover benefits under the terms of the plan"); *Transitional Hospitals,* 164 F.3d at 955. Instead, Baylor's right to recover payment for covered health services is governed by the three intertwined contracts and does not implicate the restrictions and limitations of ERISA.

Second, Baylor's contract claims do not directly affect or modify the relationship between Van Enterprises and its plan participants or beneficiaries, including the Delgados. See *Memorial Hospital,* 904 F.2d at 248–50; *Perkins,* 898 F.2d at 473. In fact, in the Fifth Circuit, a provider such as Baylor "does not even have independent standing to seek redress under ERISA." *Memorial Hospital,* 904 F.2d at 249; see also *Hermann Hospital,* 845 F.2d at 1289–90 (stating that a health care provider may not sue under ERISA as a non-enumerated party unless it claims an assignment of rights); *Baylor I,* at 509–10; *Foley,* 226 F.Supp.2d at 897. Baylor's relationship with Epoch flows from and is governed by the three intertwined contracts. See *Foley,* 226 F.Supp.2d at 896–97 (recognizing "the practical situation that managed care often involves multiple contractual relationships entered into by various parties"). Because it seeks to enforce a contract with Epoch, Baylor is suing on

its own behalf as an independent creditor—not on behalf of its patients, the Delgados.[9] *See* Response at 10.

In sum, the court holds, as a matter of law, that Baylor's contract claim against Epoch does not seek to enforce any matters Congress intended to be regulated exclusively by ERISA. Accordingly, Epoch's motion for summary judgment on this basis must be denied.

## III. *CONCLUSION*

As set forth above, there is a contractual relationship between Baylor and Epoch via the Hospital Services Agreement. Moreover, Baylor's right of recovery under Texas contract law exists independent of the Delgado's rights as plan participants, and is not completely preempted by ERISA. Because Epoch has not proved its entitlement to judgment as a matter of law, its motion for summary judgment is **DENIED.**[10]

**SO ORDERED.**

---

9. That Baylor could have sued as an assignee is not dispositive. *Methodist Hospitals*, 2003 WL 21266775 at \*3; see also *Foley*, 226 F.Supp.2d at 891–92 (recognizing and overruling its previous, errant conclusion that the plaintiff's claims were premised on the existence of an assignment where an independent, separate and distinct cause of action existed against the HMO); *In Home Health, Inc. v. Prudential Insurance Company of America*, 101 F.3d 600, 604, 607 (8th Cir.1996) (ordering that a provider's action be remanded to the state court after finding that the provider was not asserting a claim as an assignee of the patient, but as an "independent entity seeking damages as distinguished

from plan benefits"). Given Baylor's independent right of action as a creditor, the court will not recharacterize Baylor as an assignee.

10. Because Epoch has not carried its burden as the movant for summary judgment under Rule 56, F.R. Civ. P., it necessarily follows that it has not carried its burden under Rule 12(b)(6) of showing beyond doubt that Baylor can prove no set of facts in support of its claims that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Accordingly, Epoch's alternative motion to dismiss for failure to state a claim is also denied.