NO. 07-10-00093-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

NOVEMBER 8, 2011

LUBBOCK HEART HOSPITAL, L.P., APPELLANT

v.

OLYMPUS MANAGED HEALTH CARE, INC., APPELLEE

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-541,633-B; HONORABLE WILLIAM C. SOWDER, JUDGE

Before CAMPBELL and PIRTLE, JJ., and BOYD, S.J.[1]

**MEMORANDUM OPINION**

Appellant Lubbock Heart Hospital, L.P. ("Heart Hospital") appeals from the trial court's order granting summary judgment in favor of appellee Olympus Managed Health Care, Inc. ("Olympus"). Raising two issues, the Heart Hospital argues the trial court erred in granting summary judgment. We will affirm the judgment of the trial court.

---

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

Background

The facts from which the parties' disagreement arises are not disputed. Olympus is a third-party administrator whose clients are insurance companies or other entities providing health care benefits to individuals. Multiplan, Inc. ("MPI") maintained a network of healthcare facilities and practitioners. In October 2000, Olympus and MPI entered a contract (the "Access Agreement") that allowed individuals insured by Olympus's insurance company clients to access MPI's network of health care providers.

On November 1, 2005, the Heart Hospital joined MPI's network by executing a Participating Facility Agreement ("PFA") with MPI. That contract recited that MPI had agreements with various entities that issue or administer health coverage under group benefit plans or comparable arrangements. The contract provided that the Heart Hospital would treat individuals participating in health plans with which MPI had an agreement, and be paid at discounted rates. The contract did not include any reference to Olympus and Olympus is not a party to the PFA.

In May 2006, an individual[2] insured by one of Olympus's insurance company clients received medical care from the Heart Hospital. MPI calculated the discount. Olympus informed its client of the amount, and the insurer paid the Heart Hospital the amount calculated by MPI. In July 2007, the Heart Hospital informed Olympus the insurer owed an additional $17,486.25 on the claim because MPI applied an incorrect discount. The insurer did not pay the additional amount and the Heart Hospital attempted to recover the funds from Olympus, on a breach of contract theory. Olympus

_____

[2] To protect the patient's privacy, the patient was not identified in the record.

filed a traditional motion for summary judgment in October 2009. The trial court granted the motion.[3]

Analysis

Standard of Review

A trial court's decision to grant a traditional motion for summary judgment is reviewed *de novo. Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). *See also Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex.App.--Corpus Christi 2003, no pet.) On review of a traditional summary judgment, we must determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Any evidence favorable to the non-movant is taken as true, and any doubts are resolved in the non-movant's favor. *Valence,* 164 S.W.3d at 661.

A defendant who conclusively negates at least one of the essential elements of each of the plaintiff's causes of action is entitled to summary judgment. *Johnson v. Felts*, 140 S.W.3d 702, 706 (Tex.App.--Houston [14th Dist.] 2004, pet. denied). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816, 48 (Tex. 2005). When the trial court does not specify the basis for its summary judgment, we will affirm the judgment if any one of

---

[3] There were other defendants. The trial court severed the Heart Hospital's claim against Olympus, making the summary judgment final.

the theories advanced in the motion is meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

Application

The Heart Hospital argues Olympus breached its contractual obligation to ensure payment of medical claims to the Heart Hospital. Olympus contends there was no contract between Olympus and the Heart Hospital, and that even if there were, the contract did not obligate Olympus to ensure payment. The Heart Hospital responds that Olympus is estopped from denying it is obligated to pay the Heart Hospital under the PFA because Olympus cannot accept the benefits of the contract, a discounted rate for services, while at the same time denying it is a party to the contract and failing to fulfill its obligations under the contract.

The essential elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach**.** *Domingo v. Mitchell,* 257 S.W.3d 34, 39 (Tex.App.—Amarillo 2008, pet. denied); *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex.App.--Houston [1st Dist.] 2001, no pet.).

Relying on *Fort Worth Independent School District v. City of Fort Worth,* 22 S.W.3d 831, 835-36 (Tex. 2000) and *Baylor Univ. Med. Ctr. v. Epoch Groups, L.C.,* 340 F.Supp.2d 749, 755 (N.D. Tex. 2004), the Heart Hospital argues that its agreement with MPI and Olympus's agreement with MPI, taken together, formed a contractual relationship among the Heart Hospital, Olympus and MPI.

4

Assuming for the moment that were true, we agree with Olympus that such a contract would not impose on it the obligation to pay for treatment provided by the Heart Hospital. In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *J.M. Davidson, Inc.*, 128 S.W.3d at 229; *Coker*, 650 S.W.2d at 393. Contract terms are given their plain, ordinary and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *W. Reserve Life Ins. Co. v. Meadows*, 152 Tex. 559, 261 S.W.2d 554, 557 (Tex. 1953); *see also Knott*, 128 S.W.3d at 219.

The Access Agreement between MPI and Olympus sets out a procedure for payment of claims. It provides that health care providers in MPI's network submit claims to Olympus for treatment provided patients insured by Olympus's insurance company clients. Olympus in turn provides the claim to MPI, who is responsible for "repricing" the claim to reflect the discounted amount. With respect to payment, the agreement provides that Olympus will "endeavor" to have its clients make payment within thirty days of receipt of a claim. The agreement goes on to provide, however, that "Olympus shall not be responsible for the payment of any claims to MPI Providers, however." Later in the agreement another paragraph states, "It is understood that

5

Olympus is not liable for the payment obligations of Olympus Clients." A later paragraph states MPI will notify Olympus if its client fails to pay a non-disputed claim within ninety days of its receipt of the repricing documentation. The consequence of non-payment, under that paragraph, is to authorize MPI to remove that client from participation in the network.

The PFA contains a definition of the term "client" that includes a third-party administrator like Olympus that has contracted for access to MPI's network. It further contains a paragraph entitled, "Payment by Clients." That paragraph provides that a client must pay a claim within thirty business days to get the benefit of the discounted contract rate; otherwise the client is required to pay the full, undiscounted billed charge.

Again assuming we were to construe the Access Agreement and the PFA together as a single contract among Olympus, MPI and the Heart Hospital, no reasonable reading of that contract could ignore the repeated provisions of the Access Agreement explicitly stating that Olympus was not responsible for payment for treatment provided by MPI Providers. *See, e.g., Seagull Energy E&P, Inc. v. Eland Energy,* 207 S.W.3d 342, 345 (Tex. 2006); *Coker,* 650 S.W.2d at 393 (courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless). *See also State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex. 1995); *Vincent v. Bank of Am., N.A.,* 109 S.W.3d 856, 866 (Tex.App.—Dallas 2003, pet. denied). Harmonization of the terms of the two documents cannot impose on Olympus an obligation so clearly disclaimed by the document it signed.

*Baylor Univ. Med. Ctr.,* 340 F.Supp.2d 749, involves similar agreements among health care companies, but is readily distinguishable. There, the defendant Epoch Group, L.C., served as the "claims supervisor" for an employee welfare benefit plan sponsored by a corporation. *Id.* at 752. Although, like here, the documents before the court did not include an agreement directly between Baylor and Epoch, Epoch had signed a document, the "payor acknowledgment," that expressly required it to pay for health care services and to comply with the network's "preferred provider agreements" with health care providers. *Id.* at 755. The Heart Hospital can point to no agreement signed by Olympus undertaking such commitments.

Accordingly, we conclude that even if a contractual relationship existed between the Heart Hospital and Olympus, a conclusion we need not reach, Olympus has defeated the Heart Hospital's breach of contract claim. *Johnson,* 140 S.W.3d at 706.

By its second issue, the Heart Hospital asserts the summary judgment record supports the application of quasi-estoppel to prevent Olympus from denying its liability for payment. We disagree.

Quasi-estoppel "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000) (citation omitted); *see Brooks v. Brooks*, 257 S.W.3d 418, 423 (Tex.App.--Fort Worth 2008, pet. denied) (explaining that "unlike equitable estoppel, quasi-estoppel requires no showing of misrepresentation or

7

detrimental reliance"). "Thus, quasi-estoppel forbids a party from accepting the benefits of a transaction . . . and then subsequently taking an inconsistent position to avoid corresponding obligations or effects." *Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 240 (Tex.App.--Corpus Christi 1994, writ denied).

Application of quasi-estoppel is illustrated by the two cases the Heart Hospital cites on appeal, this court's opinion in *Cambridge Prod., Inc. v. Geodyne Nominee Corp.*, 292 S.W.3d 725 (Tex.App.—Amarillo 2009, pet. denied), and *Twelve Oaks Tower I, Ltd. v. Premier Allergy, Inc.,* 938 S.W.2d 102, 111 (Tex.App.—Houston [14th Dist.] 1996, no writ). In *Cambridge*, we found evidence showed that royalty owners had accepted royalties to which they would not have been entitled but for the existence of a pooled unit. Because they had accepted royalties based on the validity of the unit, we found they were estopped to repudiate it. 292 S.W.3d at 732. In *Twelve Oaks,* 938 S.W.2d 102, the court found a party who had occupied and conducted business in premises, put its name on the door and building directory and paid rent under the lease for over a year was estopped to deny the lease had been assigned to it. *Id.* at 111.

While the Access Agreement anticipates that MPI will maintain a network for health care providers, nothing in that contract requires Olympus to be a party to MPI's agreements with such providers. Nor, by complying with the Access Agreement, did Olympus exercise rights, or receive any benefit,[4] it would not have possessed or received unless it were a party to the PFA. We cannot agree that Olympus's execution

---

[4] Indeed, the precise benefit that Olympus received from the patient's treatment at the Heart Hospital at a discounted rate is unclear from the summary judgment record. Neither the Access Agreement nor the PFA provide for compensation to Olympus.

of the Access Agreement with MPI in 2000 or its processing of the claims submitted by the Heart Hospital after it joined MPI's network in 2005 raise a fact issue as to the application of quasi-estoppel. Olympus is not barred by quasi-estoppel from denying it is bound by the PFA to pay for the treatment provided by the Heart Hospital.

We overrule Heart Hospital's second issue, and affirm the judgment of the trial court.

James T. Campbell
Justice