

# IN THE
## TENTH COURT OF APPEALS

### No. 10-11-00014-CV

NATHAN P. PHILIPELLO
AND SHARI K. PHILIPELLO,

                                        Appellants

 v.

BRETT G. TAYLOR, THE BILL W. CLEMENTS
AND VELMA F. CLEMENTS REVOCABLE
LIVING TRUST, BILLY R. CLEMENTS,
AND LARRY B. CLEMENTS,

                                        Appellees

From the 82nd District Court
Robertson County, Texas
Trial Court No. 08-01-18,007-CV-A

## MEMORANDUM OPINION

This dispute centers on the ownership of an undivided one-fourth mineral interest associated with a tract of land located in Robertson County, Texas, which is now included in a prolific gas unit. The trial court granted summary judgment in this case in favor of appellees/cross-appellants, Brett G. Taylor, The Bill W. Clements and Velma F. Clements Revocable Living Trust, Billy R. Clements, and Larry B. Clements

(collectively referred to as "Taylor"), and specifically concluded that: (1) the reservation of the disputed one-fourth mineral interest by Bill and Velma in 1991 failed under the *Duhig* doctrine because it did not explicitly except a prior conveyance of one-half of the minerals to Billy and Larry, *see generally Duhig v. Peavy-Moore Lumber Co., Inc.*, 135 Tex. 503, 144 S.W.2d 878 (1940); and (2) because the one-fourth and one-half mineral interests were excepted from the deed of appellants/cross-appellees, Nathan P. Philipello and Shari K. Philipello, the disputed one-fourth mineral interest did not pass to the Philipellos.

On appeal, the Philipellos complain that the trial court erred in granting summary judgment in favor of Taylor because an exception contained in the Philipellos' property deed did not act as a reservation of the disputed one-fourth mineral interest.[1] In several issues on cross-appeal, Taylor argues that the trial court improperly applied the doctrine articulated in *Duhig* to the facts in this case. *See generally id*. Although we reverse the *Duhig* finding, this does not change the effect of the trial court's judgment. Accordingly, we affirm.

## I.  BACKGROUND

### A. The Conveyances

In 1950, Bill and Velma Clements, the parents of Billy and Larry, obtained a 501-acre tract of land in Robertson County. For many years, Bill and Velma operated a farm

---

[1] Vernon E. and Dawna R. Hancock were parties to the summary judgment and this appeal; however, while this appeal was pending, the Hancocks filed a motion to dismiss their appellate claims because they had settled with Taylor.

on the property and owned both the surface and mineral rights associated with the land.

In 1982, Bill and Velma decided to convey an undivided one-half mineral interest in the property to sons Billy and Larry, with each son receiving an undivided one-fourth mineral interest in the entire property. This deed was properly recorded in the property records and specifically noted that Billy and Larry's interests were subject to all prior recorded encumbrances affecting the property.

Later, in 1991, Bill and Velma agreed to sell the surface rights and a portion of the mineral rights associated with approximately 401 acres of the property to the Nelson Family Farming Trust ("Nelson Trust"). Bill and Velma kept 100 acres of the surface and reserved a one-fourth mineral interest pertaining to the 401 acres being sold. On September 17, 1991, the parties entered into a standard "Farm and Ranch Earnest Money Contract," which provided, among other things, that: (1) one-half of the mineral interest associated with the portion of the property being sold to the Nelson Trust was outstanding in third parties; (2) Bill and Velma were retaining a one-fourth mineral interest in the 401 acres; and (3) the Nelson Trust was to receive the remaining one-fourth mineral interest associated with the 401 acres.

However, the deed, which was apparently drafted by the title company without either party having a lawyer review the document and was executed on September 26, 1991, did not specifically state that one-half of the mineral interests were outstanding in third parties—a failure to specifically recognize the 1982 deed from Bill and Velma to Billy and Larry. Instead, the deed provided the following, which Taylor argues

Philipello v. Taylor                                                                 Page 3

implicitly references Billy and Larry's interests: "It is specifically agreed and understood by and between the Grantors [Bill and Velma] and Grantee [Nelson Trust] that this conveyance is subject to all leases, easements, restrictions, covenants, encroachments[,] and ordinances of record and actually affecting the property on the ground." The 1991 deed was filed in the property records; however, the "Farm and Ranch Earnest Money Contract" was not.

Approximately two years later, in 1993, Bill and Velma decided to stop farming the land and agreed to sell the remaining 100 acres they owned to the Nelson Trust. Like the prior conveyance between the parties, Bill and Velma reserved a one-fourth mineral interest in the 100-acre tract of land. This deed, however, contained an expressed exception of the one-half mineral interest outstanding with Billy and Larry. And like the prior deeds, this deed was properly recorded.

In 1995, as part of their estate plan, Bill and Velma conveyed all of their remaining mineral interests in the subject property to The Bill W. Clements and Velma F. Clements Revocable Living Trust.

About six years later, in 2001, the Nelson Trust agreed to sell approximately 110 acres of the property to the Philipellos. In a standard "Farm and Ranch Contract," which was signed by the parties on May 25, 2001, the Nelson Trust indicated that it was selling the 110 acres to the Philipellos. However, the contract stated that: (1) approximately three-fourths of the mineral interest associated with the 110 acres was outstanding in third parties, which corresponded with the one-half mineral interest owned by Billy and Larry and the one-fourth mineral interest reserved by Bill and

Velma; (2) the Nelson Trust retained one-eighth of the royalty interest associated with the 110 acres for ten years, at which time it would revert to the Philipellos; and (3) the Philipellos received "25% of the minerals" associated with the 110 acres. The corresponding "Warranty Deed with Vendor's Lien" was signed by the parties in late July 2001 and was subsequently recorded in the property records. The deed specifically referenced the Nelson Trust's reservation of the one-eighth royalty interest and contained a section entitled, "Exceptions to Conveyance and Warranty." In this section, several easements were listed; additionally, Bill and Velma's 1982 conveyance of one-half of the mineral interest to Billy and Larry, Bill and Velma's 1991 deed to the Nelson Trust, wherein Bill and Velma retained a one-fourth mineral interest, and Bill and Velma's 1995 conveyance to their revocable living trust were specifically mentioned as exceptions to the conveyance. This listing was not included in the section of the deed— entitled "Reservations from Conveyance: SAVE AND EXCEPT"—where the Nelson Trust's one-eighth royalty interest was referenced.

On July 30, 2007, the revocable living trust, Billy, and Larry entered into a "Term Royalty Deed" with Taylor, which called for the conveyance of one-half of their royalty interest in the entire 501 acres to Taylor.

In late 2007, XTO Energy, the operator of an oil and gas lease granted by the Clements on the 501-acre farm and other leases that XTO had combined to form the "Hancock Gas Unit," drilled a producing gas well and sent out a division order, which credited Bill and Velma, whose interest was now with the revocable trust, with ownership of the now-disputed one-fourth mineral interest in the 401-acre property.

Shortly thereafter, the Hancocks and the Philipellos notified XTO of their ownership claim to the disputed one-fourth mineral interest.[2]

## B. Procedural History

On January 24, 2008, Taylor filed his original petition against the Philipellos, the Hancocks, and the Nelson Trust, requesting from the trial court, among other things, declarations that:

> [A]s a result of the Clements-Nelson Deed and the 100 Acre Tract Deed: (1) B.W. Clements and B.W. Clements and wife, Velma Clements, reserved an undivided one-fourth (1/4) of all the oil, gas[,] and other minerals in, on and under and that may be produced from the Property via the Clements-Nelson Deed and (2) as successor to The Bill W. Clements and Velma F. Clements Revocable Living Trust (as successor in interest to B.W. Clements and wife, Velma F. Clements), and via the Clements-Taylor Deed, Plaintiff Brett Taylor owns all right, title[,] and interest to an undivided one-half (1/2) of all of the royalty interest, of any type, as to all oil, gas[,] and other hydrocarbons, and any other substances produced therewith from the Property and owned by The Bill W. Clements and Velma F. Clements Revocable Living Trust, Bill W. Clements, Larry B. Clements[,] and Billy R. Clements.

Philipello and the Nelson Trust filed original answers generally denying all of the allegations contained in Taylor's original petition. Thereafter, several motions for summary judgment were filed by various parties, and the Philipellos and the Hancocks filed a cross-claim against the Nelson Trust requesting a declaration from the trial court that they own one-half of the mineral interest—the one-fourth interest specifically conveyed in the 2001 deed and the disputed one-fourth interest reserved by Bill and

---

[2] In 2003, the Hancocks agreed to purchase 346 acres of the property from the Nelson Trust, which consisted of 291 acres from the 401-acre property purchased from Bill and Velma in 1991 and 55 acres from the 100-acre tract purchased from Bill and Velma in 1993. The sales contract between the Hancocks and the Nelson Trust indicated that three-fourths of the mineral interest was outstanding in third parties and that the Hancocks received a one-fourth mineral interest in the 346 acres purchased.

Velma in 1991—associated with the 110 acres "as a result of the Nelson Trust-Philipello deed with the exception of a 1/8 of royalty reservation for a period of 10 years as set forth in the deed."[3]  Taylor filed an answer to Philipello's cross-claim denying all of the allegations contained therein.  Later, Taylor filed an amended petition, requesting the same declarations as before and, in the alternative, asking that the 1991 deed from Bill and Velma to the Nelson Trust be reformed due to a mutual mistake.

On December 10, 2008, the trial court granted a summary-judgment motion filed by Taylor, ordered reformation of the 1991 deed from Bill and Velma to the Nelson Trust based upon mutual mistake, and severed Taylor's claims from the underlying lawsuit—thereby rendering its order final and appealable.

The Nelson Trust, Hancocks, and Philipellos then moved for a new trial and for reconsideration of Taylor's summary-judgment motion, arguing, among other things, that fact issues existed regarding a statute-of-limitations defense which was previously pleaded.  Subsequently, on February 11, 2009, the trial court entered an order granting summary judgment in favor of the Nelson Trust, granting reformation in favor of Taylor, and granting a new trial as to the statute-of-limitations issue.

Taylor and the Nelson Trust eventually settled on June 11, 2009.  Under the terms of the settlement, the Nelson Trust assigned to Taylor all of its right, title, and interest in the disputed one-fourth mineral interest.  Specifically, the document provided that:

> It is the intent of the instrument to assign, transfer, and quitclaim Grantor's [the Nelson Trust] interest in the Property to Billy R. Clements and Larry B. Clements, in equal undivided shares, subject to the Term

---

[3] The Philipellos' and Hancocks' cross-claim was later amended to include a reformation claim.

Royalty Deed to Brett G. Taylor of record at Vol. 997, Page 330, of the Public Records of Robertson County, Texas.

After settling with the Nelson Trust, Taylor once again moved for summary judgment, arguing that if the Clements' reservation in the 1991 deed failed under *Duhig*, the disputed one-fourth interest remained with the Nelson Trust and did not pass to either the Hancocks or the Philipellos under their deeds with the Nelson Trust.

On August 31, 2009, the trial court granted Taylor's motion for summary judgment, holding that the disputed one-fourth interest remained with the Nelson Trust under the *Duhig* doctrine, did not pass to the Hancocks or Philipellos, and was now owned by Taylor because of the June 11, 2009 settlement assignment. In a subsequent order signed on October 19, 2009, the trial court held that the Philipellos' and Hancocks' pleas for reformation were barred by limitations as a matter of law.

Then, on the morning that trial was set to begin on the remaining issues, Taylor reached an agreement with the Philipellos and the Hancocks, which called for the parties to abandon their respective reformation claims and allow the trial court's prior orders construing the deed to be combined into a final judgment. As a result of the agreement, the trial court entered its final judgment on December 13, 2010. In its final judgment, the trial court held that: (1) Bill and Velma's reservation of a one-fourth mineral interest in the 1991 deed failed under *Duhig* because it did not explicitly except from its grant and warranty the one-half mineral interest previously conveyed to Billy and Larry; and (2) because the reserved one-fourth mineral interest and the previously conveyed one-half mineral interest are both expressly excepted from the grants and

warranties of the Hancock and Philipello deeds, the one-fourth mineral interest did not pass to either the Hancocks or the Philipellos. Instead, the disputed one-fourth interest remained with the Nelson Trust until it was conveyed to Taylor pursuant to the June 11, 2009 settlement assignment.

Thereafter, the Philipellos filed their notice of appeal, and Taylor filed a notice of cross-appeal.

## II. STANDARD OF REVIEW

We review the trial court's grant of a traditional motion for summary judgment de novo. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When reviewing a traditional motion for summary judgment, we must determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). The movant bears the burden of proof in a traditional motion for summary judgment, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *See Grant*, 73 S.W.3d at 215. We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co. v Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We will affirm a traditional summary judgment only if the record establishes that the movant has conclusively proved its defense as a matter of law or if the movant has negated at least one essential element of the plaintiff's cause of action. *IHS Cedars Treatment Ctr. of*

*Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

### III. THE *DUHIG* DOCTRINE

In their first issue, the Philipellos argue that the trial court erred in concluding that the exception to the warranty set forth in the 2001 deed between the Nelson Trust and the Philipellos acted as a reservation of a one-fourth mineral interest instead of as a protection of the Nelson Trust warranty. However, we need not address this issue because the improper application of the *Duhig* doctrine—an issue raised in Taylor's cross-appeal—is dispositive in this case. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is a brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."); *see also Duhig*, 144 S.W.2d at 880-81.

In his cross-appeal, Taylor contends that, for various reasons, the trial court improperly applied the *Duhig* doctrine to the facts in this case. *See* 144 S.W.2d at 880-81. The Philipellos counter that the *Duhig* doctrine applied because, on its face, the 1991 deed conveyed fee simple title to the Nelson Trust, though it did not explicitly reference the 1982 deed to Billy and Larry. The Philipellos argue that because the 1991 deed failed to explicitly reference the 1982 deed, the *Duhig* doctrine vested the Nelson Trust with all of the mineral interest owned by Bill and Velma at the time of the 1991 deed, which the Nelson Trust later conveyed to the Philipellos in 2001. Therefore, instead of receiving a one-fourth mineral interest, as specified in the 2001 deed, the Philipellos contend that they actually received a one-half mineral interest. The Philipellos also

argue that the language in the 2001 deed allegedly excepting Bill and Velma's one-fourth mineral interest is not a reservation and, thus, does not overcome the operation of the *Duhig* doctrine.[4]

## A. *Duhig v. Peavy-Moore Lumber Company, Inc.*

In *Duhig*, W.J. Duhig purported to convey fee simple title to land by a general warranty deed and to reserve an undivided one-half mineral interest in the land. *Id.* at 878. However, unbeknownst to the grantee, on the date of the deed, one half of the minerals were outstanding in a third person—the estate of Alexander Gilmer. *Id.* The court held, under that fact situation, that: (1) the covenant of warranty extended to the surface of the land and one-half of the minerals; (2) there was a breach of the warranty; and (3) that equity would estop Duhig and those claiming under him from asserting title against the grantee and those claiming under it. *Id.* at 880-81 ("Thus[,] the deed is so written that the general warranty extends to the full fee simple title to the land except an undivided one-half interest in the minerals."). The effect of the court's holding was to take the one-half mineral interest allegedly retained by Duhig and give it to the grantee in order to fulfill the covenant of general warranty. *Id.* at 880-81. Essentially, this allowed the grantee to get what it bargained and paid for, rather than having only a breach of warranty claim for damages. *See id.* at 880-81.

The general rule set forth in *Duhig* was:

---

[4] We agree with the Philipellos that the Nelson Trust did not intend to reserve a one-fourth mineral interest in the 2001 deed. We disagree, however, with the notion that the Nelson Trust had a one-half mineral interest to convey at the time of the 2001 deed. The Nelson Trust had a one-fourth mineral interest and subsequently conveyed that to the Philipellos. As we explain later, the disputed one-fourth interest that the Philipellos attempt to obtain was owned by Bill and Velma and their revocable trust at all points in time.

a deed purporting to convey a fee simple or a lesser definite estate in land and containing covenants of general warranty of title or of ownership will operate to estop the grantor from asserting an after-acquired title or interest in the land, or against the estate which the deed purports to convey, as against the grantee and those claiming under him.

*Id.* at 880; *see Gutierrez v. Rodriguez*, 30 S.W.3d 558, 561 (Tex. App.—Texarkana 2000, no pet.); *Seydler v. Herder*, 361 S.W.2d 411, 414 (Tex. App.—El Paso 1962, writ ref'd n.r.e.) ("The general warranty deed from George Seydler to George Herder warranted the full fee simple title to George Herder. It conveyed all the title that Seydler had, and if he did not then have the full fee simple title, but later acquired it, then such title would pass eo instante to George Herder, and would relate back to the date of said warranty deed."). Or, in other words, a reservation in a deed is ineffective when, as a result of the grantor's title shortage, the conveyance and the reservation cannot both be given effect. *See Duhig*, 144 S.W.2d at 880 ("The deed, of course, does not actually convey what the grantor does not own.").

**B. Canons of Construction for Contracts and Deeds**

In analyzing the *Duhig* issue, we must ascertain the intent of the parties through examining the contents of several contracts and deeds. In construing a written agreement, we must ascertain and give effect to the parties' intentions as expressed in the agreement. *Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005) (per curiam); *Carbona v. CH Med., Inc.*, 266 S.W.3d 675, 680 (Tex. App.—Dallas 2008, no pet.); *see Terrill v. Tuckness*, 985 S.W.2d 97, 101 (Tex. App.—San Antonio 1998, no pet.) (noting that the rules of contract construction apply to the construction of deeds). We discern intent from the agreement itself, and the agreement must be enforced as written.

*Deep Nines, Inc. v. McAfee, Inc.*, 246 S.W.3d 842, 846 (Tex. App.—Dallas 2008, no pet.); *see French v. Chevron U.S.A., Inc.*, 896 S.W.2d 795, 797 (Tex. 1995) ("Because 'once a dispute arises over meaning, it can hardly be expected that the parties will agree on what meaning was intended,' courts use canons of construction to help ascertain the parties' intent." (quoting *Southland Royalty Co. v. Pan Am. Petroleum Corp.*, 378 S.W.2d 50, 59 (Tex. 1964) (Calvert, C.J., concurring))). We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Frost Nat'l Bank*, 165 S.W.3d at 312. This consideration comes "'from a utilitarian standpoint bearing in mind the particular business activity sought to be served,'" and we will "'avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" *Id.* (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)). And, "[i]t is a rule of construction of deeds that they are to be most strongly construed against the grantor and in favor of the grantee, and this rule applies to reservations and exceptions." *Commerce Trust Co. v. Lyon*, 284 S.W.2d 920, 921 (Tex. Civ. App.—Fort Worth 1955, no writ).

Extrinsic evidence of intent is admissible only if the deed is ambiguous on its face. *See Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 283 (Tex. 1996); *see also CenterPoint Energy Houston Elec., L.L.P. v. Old TJC Co.*, 177 S.W.3d 425, 431 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("A court may consider the parties' interpretations of the contract through extrinsic or parol evidence only after a contract is first determined to be ambiguous."). A mere disagreement about the proper interpretation of a deed, however, does not make the deed ambiguous; the instrument is ambiguous

only if, after application of the rules of construction, the deed is reasonably susceptible to more than one meaning. *Brown v. Havard*, 593 S.W.2d 939, 942 (Tex. 1980); *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951).

In any event, the Texas Supreme Court has also held that "all writings that pertain to the same transaction will be considered together, even if they were executed at different times and do not expressly refer to one another." *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999); *see Miles v. Martin*, 159 Tex. 336, 321 S.W.2d 62, 65 (1959) ("It is well settled that separate instruments executed at the same time, between the same parties, and relating to the same subject matter may be considered together and construed as one contract."); *GPA Holding, Inc. v. Baylor Health Care Sys.*, 344 S.W.3d 467, 471 (Tex. App.—Dallas 2011, pet. filed); *see also McDowell v. Bier*, No. 2-09-231-CV, 2010 Tex. App. LEXIS 2546, at **9-10 (Tex. App.—Fort Worth Apr. 8, 2010, no pet.) (mem. op.). The supreme court cautioned, however, "that this rule is simply a device for ascertaining and giving effect to the intention of the parties and cannot be applied arbitrarily." *Parks*, 1 S.W.3d at 102 (citing *Miles*, 321 S.W.2d at 65).

In addition, "[a] written contract must be construed to give effect to the parties' intent expressed in the text as understood in light of the facts and circumstances surrounding the contract's execution, subject to the parol evidence rule." *Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011) (citing *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518-19 (Tex. 1968)). The parol evidence rule applies when parties have a valid, integrated written agreement, and precludes

enforcement of prior or contemporaneous inconsistent agreements. *Id.* (citing *Hubacek v. Ennis State Bank*, 159 Tex. 166, 317 S.W.2d 30, 32 (1958); RESTATEMENT (SECOND) OF CONTRACTS § 213 (1981)); *see Gannon v. Baker*, 818 S.W.2d 754, 755 (Tex. 1991) (per curiam) (noting that the parol evidence rule does not apply to mere statements or recitals of past facts). "The rule does not prohibit consideration of surrounding circumstances that inform, rather than vary from or contradict, the contract text." *Houston Exploration Co.*, 352 S.W.3d at 469; *see Bandera Drilling Co. v. Sledge Drilling Corp.*, 293 S.W.3d 867, 871 (Tex. App.—Eastland 2009, no pet.) ("[C]ourts can properly consider parol evidence of the surrounding circumstances when interpreting a contract."). "Those circumstances include, according to Professor Williston's treatise, 'the commercial or other setting in which the contract was negotiated and other objectively determinable factors that give a context to the transaction between the parties." *Id.* (citing 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 32.7 (4th ed. 1999)). Negotiations of the parties "may have some relevance in ascertaining the dominant purpose and intent of the parties embodied in the contract interpreted as a whole." *Houston Exploration Co.*, 352 S.W.3d at 469-70 (citing *Tanner Dev. Co. v. Ferguson*, 561 S.W.2d 777, 781 (Tex. 1977); RESTATEMENT (SECOND) OF CONTRACTS § 214 ("[N]egotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish . . . (c) the meaning of the writing, whether or not integrated . . . .")).

## C. Discussion

### 1. The 1991 Conveyance from Bill and Velma to the Nelson Trust

For numerous reasons, which we detail below, we do not believe that the *Duhig* doctrine applies to the facts in this case. First, we examine the contents of the 1991 deed from Bill and Velma to the Nelson Trust. Neither party asserts that the governing documents are ambiguous. In any event, the 1991 deed clearly indicates a reservation of a one-fourth mineral interest by Bill and Velma.[5] However, the deed does not expressly reference the previous one-half mineral interest that Bill and Velma conveyed to Billy and Larry in 1982. Instead, the 1991 deed provides the following: "It is specifically agreed and understood by and between the Grantors [Bill and Velma] and Grantee [the Nelson Trust] that this conveyance is subject to all leases, easements, restrictions, covenants, encroachments[,] and ordinances of record and actually affecting the property on the ground." It is undisputed that the 1982 conveyance to Billy and Larry was properly recorded in the property records and, thus, was searchable via a title search. It is arguable that, even though the 1991 deed does not explicitly reference the 1982 conveyance of one-half of the minerals to Billy and Larry, the 1991 deed implicitly references the conveyance.

---

[5] Specifically, the 1991 deed provides the following with regard to Bill and Velma's one-fourth-mineral-interest reservation:

> **SAVE AND EXCEPT**, and there is hereby reserved unto Grantors [Bill and Velma], their heirs and assigns, an undivided one-fourth (1/4) of all of the oil, gas[,] and other minerals in and under and that may be produced from the above described property, together with the right of ingress and egress at all times for the purposes of mining, drilling, exploring, operating[,] and developing said lands for oil, gas[,] and other minerals and removing the same therefrom.

(Emphasis in original).

The "subject to" clause served two purposes: (1) it limited Bill and Velma's conveyance to the Nelson Trust; and (2) it put the Nelson Trust on notice that other encumbrances to title may exist. *See Averyt v. Grande, Inc.*, 717 S.W.2d 891, 894 (Tex. 1986) ("The 'subject to' clause does limit the estate granted and warranted."); *see also Cockrell v. Tex. Gulf Sulphur Co.*, 299 S.W.2d 672, 676 (Tex. 1956) (noting that the term "subject to" in a mineral deed is a limiting clause, and a qualifying term that "mean[s] 'subordinate to,' '[s]ubservient to' or 'limited by.' There is nothing in the use of the words 'subject to,' in their ordinary use, which would even hint at the creation of affirmative rights"); *Freeman v. Southland Paper Mills, Inc.*, 573 S.W.2d 822, 823-24 (Tex. App.—Beaumont 1978, writ ref'd n.r.e.) (same). In addition, the inclusion of the terms "restriction" and "covenant" in the deed arguably supports the contention that the 1991 deed implicitly referenced the 1982 conveyance to Billy and Larry and, thus, does not support a *Duhig* finding that the Nelson Trust received more than the one-fourth interest that was bargained for. "Restriction" is defined and commonly used to mean "[a] limitation (esp. in a deed) placed on the use or enjoyment of property." BLACK'S LAW DICTIONARY 1054 (7th ed. 2000). On the other hand, "covenant" is defined as "[a] formal agreement or promise, [usually] in a contract." *Id.* at 298. Either of these terms arguably supports Taylor's assertion that the 1991 deed implicitly referenced the 1982 conveyance, especially considering the 1982 deed was properly recorded and, therefore, put all parties on notice of the interest, and did not create a situation where Bill and Velma were conveying to the Nelson Trust an interest that they did not have.

Nine days prior to the signing of the deed, the parties entered into a standard "Farm and Ranch Earnest Money Contract," which involved the same property, parties, and interests and clearly stated that three-fourths of the mineral interest associated with the portion of the property purchased by the Nelson Trust was outstanding in third parties—one half corresponding with Billy and Larry's interest and one-fourth retained by Bill and Velma.[6] *See Parks*, 1 S.W.3d at 102; *Miles*, 321 S.W.2d at 65; *GPA Holding, Inc.*, 344 S.W.3d at 471; *see also McDowell*, 2010 Tex. App. LEXIS 2546, at **9-10. The "Farm and Ranch Earnest Money Contract" also stated that the Nelson Trust was to receive only a one-fourth mineral interest, nothing greater. With regard to the surrounding circumstances of the transaction between Bill and Velma and the Nelson Trust, Taylor included excerpts from deposition testimony provided by Bill; Wesley Nelson, who participated in the transactions; and Howard Wayne Hoegemeyer. Both Bill and Wesley testified that all parties understood that three-fourths of the minerals were outstanding in third parties and that the Nelson Trust was only to receive a one-fourth mineral interest.[7] Moreover, Hoegemeyer, who was the real estate agent representing

---

[6] To the extent that the Philipellos assert that the merger doctrine prevents us from considering the sales contract to interpret either the 1991 or 2001 deeds, we note that the merger doctrine applies only in the absence of fraud, accident, or mistake. *See Gail v. Berry*, 343 S.W.3d 520, 525 (Tex. App.—Eastland 2011, pet. denied) (citing *Commerical Bank, Unincorporated, of Mason, Tex. v. Satterwhite*, 413 S.W.2d 905, 909 (Tex. 1967)). Here, the record contains testimony indicating that the 1991 deed was drafted by the title company and that neither the Clements nor the Nelson Trust was represented by lawyers. Mutual mistake was raised in the trial court and the parties sought reformation of the deed. The trial court entered an order calling for the reformation of the 1991 deed based upon mutual mistake. Moreover, Wesley and Bill provided consistent deposition testimony regarding the parties' intent. Because the 1991 deed was inartfully drafted and the record contains evidence indicating a consistent intent on the part of the parties to the 1991 deed, it appears as if this case involves a mistake with respect to the 1991 deed, which prevents the application of the merger doctrine. *See id.* ("[A] scrivener's failure to embody an agreement is sufficient to show mutual mistake."); *see also Satterwhite*, 413 S.W.2d at 909.

[7] Specifically, Wesley stated that:

both Bill and Velma and the Nelson Trust in this transaction, stated that it was clear to everyone at the time of the transaction that three-fourths of the mineral interests were outstanding in others and that the Nelson Trust was to receive only a one-fourth interest in the minerals as a result of the 1991 deed. Further, Hoegemeyer stated the following with regard to the transaction:

> It says one-quarter mineral interest. Buyer will receive a one-quarter mineral interest and—go ahead.
>
> . . . .
>
> I based that on a hundred percent. One-half plus one-quarter plus one-quarter equaled the total amount of minerals.
>
> . . . .
>
> And I normally don't put that in there in a contract that the buyer will receive a quarter, but that—we were at Mr. Clements' [sic] house and [the] Nelsons and that's what they wanted me to put in there, so that's what I put in there.

Based on the contract, which was executed nine days prior to the deed, the deposition testimony regarding the surrounding circumstances of the transaction, and the plain language of the deed, we conclude that the intent of the parties to the 1991 deed was that one-fourth of the minerals would be retained by Bill and Velma and one-fourth of the minerals would be conveyed to the Nelson Trust with the remaining one-half of the minerals owned by Billy and Larry in accordance with the 1982 deed. And, it is worth mentioning that the usage of the documents and testimony of surrounding

---

Well, the intent was with Mr. Clements and the trust at—or myself was that Mr. Clements did not have but one-half of the total minerals. So he was willing to transfer one-half of his one-half, which would've been one-fourth to the trust and he was to keep one-fourth of the minerals for himself and his wife.

Philipello v. Taylor

circumstances to ascertain the intent of Bill and Velma and the Nelson Trust with respect to the 1991 deed does not result in a variance or alteration of the terms of the 1991 deed, especially considering Billy and Larry's interest arguably falls within the language of the "subject to" clause of the deed. *See Houston Exploration Co.*, 352 S.W.3d at 469; *see also Parks*, 1 S.W.3d at 102.

**2. The 2001 Conveyance from the Nelson Trust to the Philipellos**

This alone would demonstrate that the *Duhig* doctrine does not apply in this situation. *See* 144 S.W.2d at 880-81. However, our conclusion is further supported by an examination of the deed and other documents pertaining to the 2001 transaction between the Nelson Trust and the Philipellos. In the "Warranty Deed with Vendor's Lien," which was signed in late July 2001, the parties included the following language, in pertinent part:

*Exceptions to Conveyance and Warranty*:

> . . . .

> 7.) Mineral and/or royalty interest, the royalties, bonuses, rentals[,] and all other rights in connection with said mineral and/or royalty rights, bonuses[,] rentals, described in instrument from B.W. Clements and wife, Velma Clements[,] to Larry B. Clements and Billy R. Clements, dated March 16, 1982, recorded in Volume 389, Page 308, Public Records of Robertson County, Texas, reference to which instrument is here made for all purposes.

> 8.) Mineral and/or royalty interest, the royalties, bonuses, rentals[,] and all other rights in connection with said mineral and/or royalty rights, bonuses[,] rentals, described in instrument from B.W. Clements and wife, Velma Clements[,] to Nelson Family Farming Trust, dated September 26, 1991, recorded in Volume 569, Page 183, Public Records of Robertson County, Texas, reference to which instrument is here made for all purposes.

(Emphasis added).  Clearly, the Philipellos' deed referenced and arguably excepted from the conveyance both the one-half mineral interest reserved for Billy and Larry in 1982 and the one-fourth mineral interest reserved by Bill and Velma in 1991.  *See Pich v. Langford*, 157 Tex. 335, 302 S.W.2d 645, 648 (1957) ("It is also well established that an interest or estate in land excepted from a grant is excluded from the grant and does not pass to the grantee."); *see also Patrick v. Barrett*, 734 S.W.2d 646, 647 (Tex. 1987) ("It is manifest that an exception does not pass title itself; instead it operates to prevent the excepted interest from passing at all.").  Based on the plain language of the deed, it would appear that the disputed one-fourth interest was excepted from the Philipellos' deed.  And, at the very least, the Philipellos had actual notice of Bill and Velma's one-fourth and Billy and Larry's one-half mineral interests that were outstanding based on the language contained in the 2001 deed.  As a result, we cannot say that the Philipellos are entitled to an interest in the minerals greater than the one-fourth interest that was specifically conveyed in the 2001 deed.

In further support of our interpretation of the Philipello deed, we note that the "Farm and Ranch Contract," signed by the parties on May 25, 2001, indicates that three-fourths of the mineral interests associated with the portion of the property purchased by the Philipellos is outstanding in third parties and that the Philipellos were to receive only one-fourth of the minerals and a one-eighth royalty interest from the Nelson Trust.  In addition, Wesley testified via deposition that, at the time of the transaction, everyone was clear that only a one-fourth mineral interest was being conveyed from the Nelson

Trust to the Philipellos. Wesley also stated that he did not recall any questions from or disputes raised by the Philipellos regarding the mineral interest being conveyed.

It is clear to us that the surrounding circumstances and documents and the plain language of the 2001 deed prevents the Philipellos from procuring a mineral interest in excess of the one-fourth for which they bargained and paid. In fact, the thrust of our holding is that: (1) Billy and Larry retain a one-half mineral interest associated with the entire 501 acres; (2) the one-fourth mineral interest that Bill and Velma reserved in the 1991 deed never passed to the Nelson Trust and, instead, remained with Bill and Velma and their revocable trust at all times; and (3) the Philipellos only own a one-fourth mineral interest with respect to the 110 acres they purchased from the Nelson Trust. The Philipellos could only receive the mineral interest that was owned and subsequently conveyed by the Nelson Trust at the time—a one-fourth mineral interest.[8] Thus, the settlement agreement between the Nelson Trust and Bill and Velma is irrelevant with respect to the disputed one-fourth mineral interest because the interest never passed to the Nelson Trust pursuant to the 1991 deed or an application of the *Duhig* doctrine. In effect, we do not believe that the *Duhig* doctrine, being equitable in nature, operates in this case to vest the Philipellos with a mineral interest that exceeds that which they bargained and paid for. *See* 144 S.W.2d at 880-81. We therefore

---

[8] It is our belief that by adopting the Philipellos' interpretation of the 1991 and 2001 deeds—that Bill and Velma did not properly reserve the one-fourth mineral interest in 1991 which then resulted in the Nelson Trust and, in turn, the Philipellos, obtaining all of Bill and Velma's interest in the minerals—a variance or alteration of the deeds would result, which violates the canon of contract construction requiring us to harmonize and give effect to all the provisions of the contracts. *See Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005).

Philipello v. Taylor                                                                                    Page 22

conclude that the trial court erred in applying the *Duhig* doctrine to the facts in this case. As such, Taylor's cross-issues pertaining to the *Duhig* doctrine are sustained.

## IV. CONCLUSION

Having sustained Taylor's cross-issues pertaining to the *Duhig* doctrine, which as we noted earlier are dispositive in this appeal, we reverse the trial court's *Duhig* finding. And because we have concluded that Bill and Velma and their revocable living trust owned the disputed one-fourth interest at all points in time as a matter of law and because the reversal of the *Duhig* finding does not change the effect of the trial court's judgment, we affirm the trial court's judgment.

AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
(Chief Justice Gray concurring with a note)*
Affirmed
Opinion delivered and filed April 25, 2012
[CV06]

*(Chief Justice Gray concurs in the judgment of the Court to the extent that it affirms the trial court's determination and judgment that the disputed ¼ mineral interest, based upon the deeds at issue in this proceeding, is owned by Brett G. Taylor, The Bill W. Clements and Velma F. Clements Revocable Living Trust, Billy R. Clements, and Larry B. Clements (as their interest appear or record, under the settlement quitclaim deed and assignment, recorded as document No. 20092869 in Volume 1076, page 772, Official Public Records of Robertson County, Texas). A separate opinion will not issue. He notes, however, that because of the settlement between the Nelson Trust and the Plaintiffs (owners listed above) the issue of the application of the *Duhig* doctrine appears moot and because it is unnecessary to the disposition of this appeal, since no

party has explained what impact, if any, the application of the doctrine would have on the actual result of the judgment of the Court as opposed to the legal underpinnings thereof after the settlement above referenced. Further, Chief Justice Gray notes that he does not join the discussion of the interpretation of the Clements to Nelson deed, such deed being unambiguous we need not resort to aids to construction and in particular the use of the contract executed 9 days prior to the unambiguous deed is inappropriate. Further, he does not join the discussion that the "subject to" language of either "restrictions" or "covenants" could include a prior reservation of a mineral interest. With these comments, he concurs in the result of the judgment of the Court.)